2007 UT 64

Emily **EGBERT** and Jerad Egbert, individually and as guardians for J.E., a minor, Plaintiffs and Appellants,

v.

**NISSAN NORTH AMERICA, INC.;** Nissan Motor Co., Ltd.; and Central Glass Co., Ltd., Defendants and Appellees.

No. 20060433.

Supreme Court of Utah.

Aug. 24, 2007.

David C. Biggs, Piero G. Ruffinengo, Preston L. Handy, Darren A. Davis, Joseph W. Steele, Kenneth D. Lougee, Salt Lake City, Jill M. Madajczyk, Patrick M. Ardis, Memphis, TN, for plaintiffs.

Michael D. Zimmerman, Tracy H. Fowler, Kamie F. Brown, Troy Booher, Salt Lake City, for defendants.

DURRANT, Justice:

## INTRODUCTION

¶ 1 The Federal District Court for the District of Utah has certified to us the following two questions:

1. In a product liability case where a manufacturer's product complies with applicable government safety standards, should the jury be instructed that a presumption of non-defectiveness has arisen under Utah Code Ann. § 78–15–6(3)? If so, should the instruction require clear and convincing evidence of a defect to rebut the presumption, or is proof by a preponderance of the evidence sufficient for rebuttal?

2. Does Utah recognize the "enhanced injury" theory of liability outlined in § 16(a) of the Restatement (Third) of Torts: Products Liability?

As to the first question, we hold that the jury should be instructed that the presumption established by Utah Code section 78–15–6(3) has arisen and that a preponderance of the evidence is sufficient to rebut it. As to the second question, we hold that Utah does recognize the "enhanced injury" theory of liability as outlined in section 16(a) of the Restatement (Third) of Torts.

## BACKGROUND

¶ 2 The underlying federal case giving rise to the certified questions involves the facts that follow. In March 2002, Jerad and Emily Egbert were involved in an automobile accident on Interstate 15 near Cedar City, Utah. Mr. Egbert was driving the couple's 1998 Nissan Altima, and Mrs. Egbert, who was nearly eight months pregnant with their daughter J.E., was riding in the front passenger seat. When Mr. Egbert tried to avoid another vehicle, he lost control of the car, and it rolled off the freeway approximately two and one-half times.

¶ 3 At some point during the accident, the front passenger window shattered. The window was made of tempered glass and met the applicable federal safety standards in place at the time the car was manufactured. Mrs. Egbert was ejected through that window and suffered a broken pelvis, injuries to her bladder, abrasions, and contusions. J.E. was born prematurely by emergency C-section following the accident and has a serious brain injury. The parties dispute whether and to

what extent the ejection proximately caused J.E.'s brain injury.

¶ 4 The Egberts brought products liability claims against Nissan under two different theories: strict liability and negligence. They assert that the front passenger window was defectively designed because it was made with tempered glass, which shatters on impact, and not laminated glass, which is designed to remain intact even if it cracks and acts as a secondary restraint mechanism to keep occupants inside the vehicle. The Egberts argue that, had the Altima's window been made of laminated glass, Mrs. Egbert may have remained in the vehicle during the rollover and her injuries would have been less severe. They also argue that, had Mrs. Egbert not been ejected, J.E. may not have suffered a brain injury.

¶ 5 Nissan argues that the Altima was not defective because the window complied with applicable government safety regulations, which allowed Nissan to use either tempered glass or laminated glass in the passenger window. In addition, Nissan argues that it was not negligent with respect to the design and manufacture of the car by using tempered glass in the front passenger window instead of laminated glass. Nissan further claims that the glass was not the proximate cause of any of Mrs. Egbert's or J.E.'s injuries and that Mrs. Egbert would have been ejected from the Altima during the accident even if the window had been made with laminated glass.

¶ 6 While preparing for trial, the parties disputed several areas of Utah law. The federal district court determined that the two issues certified to this court are controlling in the case and have not yet been decided under Utah law. It subsequently certified both questions to us pursuant to rule 41 of the Utah Rules of Appellate Procedure.

## STANDARD OF REVIEW

¶ 7 A certified question from the federal district court does not present us with a decision to affirm or reverse a lower court's decision; as such, "traditional standards of review do not apply."[1] "On certification, we 'answer the legal questions presented' without 'resolving the underlying dispute.'"[2]

## ANALYSIS

I. THE JURY SHOULD BE INSTRUCTED THAT A PRESUMPTION OF NONDEFECTIVENESS HAS ARISEN UNDER UTAH CODE SECTION 78-15-6(3) AND THAT PROOF BY A PREPONDERANCE OF THE EVIDENCE IS SUFFICIENT TO OVERCOME IT

¶ 8 The first question certified to us by the federal district court consists of two parts. First, "[i]n a product liability case where a manufacturer's product complies with applicable government safety standards, should the jury be instructed that a presumption of non-defectiveness has arisen under Utah Code Ann. § 78-15-6(3)?"[3] And

---

1. *Robert J. DeBry & Assocs. v. Qwest Dex, Inc.*, 2006 UT 41, ¶ 11, 144 P.3d 1079.

2. *In re Kunz*, 2004 UT 71, ¶ 6, 99 P.3d 793 (quoting *Spackman ex rel. Spackman v. Bd. of Educ.*, 2000 UT 87, ¶ 1 n. 2, 16 P.3d 533).

3. The district court has not certified to us the question of this section's constitutionality, so we do not address it here. But we note that the section at issue is part of the Utah Product Liability Act, Utah Code Ann. §§ 78-15-1 to -7 (2002), which we held unconstitutional in *Berry v. Beech Aircraft Corp.*, 717 P.2d 670, 686 (Utah 1985). In *Berry*, we specifically held section 78-15-3 unconstitutional under article I, section 11 of the Utah Constitution-the open courts provision-because it was a statute of repose that barred certain claims before the cause of action

arose. *Id.* at 681, 683, 685. We also held sections 78-15-4, -5, and -6 to be invalid because they were not severable from the remainder of the Act. *Id.* at 686. In response to our decision in *Berry*, the Legislature repealed and reenacted section 78-15-3, changing it from a statute of repose to a statute of limitations, and thereby addressed our constitutional concerns with the original section. *See* 1989 Utah Laws 268. The Legislature made no change to section 78-15-6, which has remained on the books since *Berry*. We have not since directly addressed the constitutionality of section 78-15-6, but we have, in several cases, referred to it without sua sponte raising any question as to its constitutionality. *See Grundberg v. Upjohn Co.*, 813 P.2d 89, 97 n. 7 (Utah 1991) (referring to section 78-15-6 as support for the Legislature's approving view of governmental standards and stating that, "[a]lthough section 78-15-6 was neither repealed,

second, "[i]f so, should the instruction require clear and convincing evidence of a defect to rebut the presumption, or is proof by a preponderance of the evidence sufficient for rebuttal?" We address both questions in turn.

¶ 9 As to the first question, we hold that the jury should be informed of the presumption of nondefectiveness under Utah Code section 78–15–6(3). That section reads, in its entirety, as follows:

> There is a rebuttable presumption that a product is free from any defect or defective condition where the alleged defect in the plans or designs for the product or the methods and techniques of manufacturing, inspecting and testing the product were in conformity with government standards established for that industry which were in existence at the time the plans or designs for the product or the methods and techniques of manufacturing, inspecting and testing the product were adopted.[4]

¶ 10 It is common to instruct juries as to the law, and as to presumptions specifically. Presumptions generally must be incorporated into the fact-finding process for juries to appropriately discharge their obligations as fact finders. The Egberts do not cite a good reason, and we cannot conceive of one, not to instruct the jury here that the rebuttable presumption of nondefectiveness applies to Nissan.

█ ¶ 11 We next consider whether the presumption in the jury instruction may be rebutted by a preponderance of the evidence or whether clear and convincing evidence is required. As we have noted, where, as in this case, the standard of proof required to rebut a presumption is not specified in the statute, "[t]he degree of proof required in a particular type of proceeding has 'traditionally been left to the judiciary to resolve.' "[5]

█ ¶ 12 As to standards of proof generally, the United States Supreme Court has said as follows:

> The function of a standard of proof, as that concept is embodied in the Due Process Clause and in the realm of factfinding, is to "instruct the factfinder concerning the degree of confidence our society thinks he should have in the correctness of factual conclusions for a particular type of adjudication." The standard serves to allocate the risk of error between the litigants and to indicate the relative importance attached to the ultimate decision.[6]

Thus, proof beyond a reasonable doubt is the standard appropriate for criminal defendants who stand to lose liberty or life upon conviction, while a preponderance of the evidence is the level of proof required in the typical civil case where only money damages are at stake.[7]

█ ¶ 13 The intermediate standard of proof—clear and convincing evidence—is appropriate when the interests at stake in a civil case are "particularly important" and "more substantial than the mere loss of money."[8] For example, the United States Supreme Court has applied this standard in cases involving civil commitment,[9] deportation,[10] and denaturalization.[11] We applied this standard in *Uzelac v. Thurgood (In re*

amended, nor specifically reenacted, there is no indication that the legislature has changed its policy regarding deference to governmental standards"); *see also Slisze v. Stanley–Bostitch*, 1999 UT 20, ¶ 18, 979 P.2d 317 (finding that the district court "properly admitted [an OSHA] regulation to establish a rebuttable presumption of nondefectiveness under Utah Code Ann. § 78–15–6(3)," without commenting on the constitutionality of that section).

4. Utah Code Ann. § 78–15–6(3) (2002).

5. *Uzelac v. Thurgood (In re Estate of S.T.T.)*, 2006 UT 46, ¶ 28, 144 P.3d 1083 (quoting *Santosky v. Kramer*, 455 U.S. 745, 755, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982)).

6. *Addington v. Texas*, 441 U.S. 418, 423, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979) (quoting *In re Winship*, 397 U.S. 358, 370, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970) (Harlan, J., concurring)).

7. *See Santosky*, 455 U.S. at 755–56, 102 S.Ct. 1388.

8. *Addington*, 441 U.S. at 424, 99 S.Ct. 1804.

9. *See id.* at 432–33, 99 S.Ct. 1804.

10. *See, e.g., Woodby v. INS*, 385 U.S. 276, 285, 87 S.Ct. 483, 17 L.Ed.2d 362 (1966).

11. *See, e.g., Chaunt v. United States*, 364 U.S. 350, 353, 81 S.Ct. 147, 5 L.Ed.2d 120 (1960).

*Estate of S.T.T.),*[12] where we considered the appropriate standard of proof for rebutting the "presumption that parents act in the best interests of their children" in Utah's Grandparent Visitation Statute.[13] We held "that a clear and convincing standard of proof should apply to satisfy due process requirements" and explained that this was the case "[b]ecause the parental presumption deals with parental liberty interests, and accordingly should be afforded great deference by the courts."[14]

¶ 14 In this case, we hold that a preponderance of the evidence is sufficient to overcome the presumption of nondefectiveness in Utah Code section 78–15–6(3). The kind of interest for which a higher standard of proof is appropriate, such as the parental liberty interest in *In re Estate of S.T.T.,* does not exist here. Nissan argues that clear and convincing evidence should be required to rebut the presumption because the government invested substantial amounts of time and money in studying the regulation at issue and that manufacturers should benefit by complying with such a carefully considered regulation. Nissan argues that, given the government's extensive studies, "it would be poor public policy . . . to permit lay jurors to reevaluate the issue and decide by a mere preponderance of the evidence relating to a single accident that [the government] was wrong." But the government's substantial investment in the safety regulation does not elevate a manufacturer's interest in that regulation to that of a fundamental liberty or particularly important interest. Thus, we are not persuaded that the interest at stake here rises to the level of requiring application of the clear and convincing standard.

■■■ ¶ 15 Nissan also argues for a clear and convincing standard because, in its view, to require only a preponderance of the evidence would render Utah Code section 78–15–6(3) a nullity. Nissan correctly explains that, at common law, the party claiming injury because of a product defect already bears the burden of showing by a preponderance of the evidence that there is a defect and that it

caused the injury. And at common law, a manufacturer's compliance with governmental regulations would be evidence tending to show no defect and would be weighed with all other evidence. Accordingly, Nissan argues that by creating the presumption of nondefectiveness in section 78–15–6(3), the Legislature meant "to rachet-up . . . the proof needed to overcome [the presumption] from what prevailed before it was passed," otherwise, the statute is of no benefit to the manufacturer.

¶ 16 Although we agree with Nissan that the Legislature must have intended to benefit the manufacturer by creating the presumption of nondefectiveness, we disagree that the intended benefit is necessarily that the plaintiff be required to meet a higher standard of proof for rebuttal. Rather, the statutory presumption benefits the manufacturer by highlighting for the jury the significance of the plaintiff's burden of establishing defectiveness by a preponderance of the evidence. That is, the presumption clearly communicates to the jury that, for the plaintiff to succeed, the plaintiff must overcome by a preponderance of the evidence the presumption that a product is nondefective because of the manufacturer's compliance with government safety standards. The presumption therefore gives a kind of legal imprimatur to the significance of compliance with federal standards. In light of this benefit to the manufacturer, requiring rebuttal by a preponderance of the evidence does not render the statute a nullity.

¶ 17 In sum, we answer the first part of the federal district court's first question in the affirmative and hold that the jury should be instructed as to the presumption established by Utah Code section 78–15–6(3). As to the second part of the first question, we hold that the jury should be instructed that a preponderance of the evidence is sufficient to rebut this presumption.

## II. UTAH RECOGNIZES THE "ENHANCED INJURY" THEORY OF LIABILITY

■■■ ¶ 18 The second question certified to us is the following: "Does Utah recognize the

---

12. 2006 UT 46, 144 P.3d 1083.

13. *Id.* ¶ 27.

14. *Id.* ¶ 28.

'enhanced injury' theory of liability outlined in section 16(a) of the Restatement (Third) of Torts: Products Liability?" Our answer is yes.

¶ 19 Section 16(a) reads as follows: "When a product is defective at the time of commercial sale or other distribution and the defect is a substantial factor in increasing the plaintiff's harm beyond that which would have resulted from other causes, the product seller is subject to liability for the increased harm."[15] This section embodies what is commonly referred to as the "enhanced injury" theory of liability. It provides that a manufacturer of a defective product can be held liable for injuries resulting from an automobile accident-even if the defective product did not cause the accident-where the defect caused injuries over and above those that would have been expected in the accident absent the defect-in other words, "enhanced injuries." Like the majority of jurisdictions that have considered this issue, we now expressly recognize the "enhanced injury" theory of liability as the law in Utah.

¶ 20 The Egberts and Nissan agree that we should recognize the "enhanced injury" theory of liability. They disagree, however, as to whether the plaintiff or the defendant manufacturer bears the burden of proof with respect to the allocation of injuries resulting from the underlying automobile accident and those resulting from the product defect. Indeed, the parties have briefed this issue at length. Because the question of who bears the burden of proof was not certified to us by the federal district court nor addressed in its order, however, we decline to address it.

## CONCLUSION

¶ 21 As to the federal district court's first question, we hold that the jury should be instructed as to the presumption of nondefectiveness in Utah Code section 78–15–6(3) and that a preponderance of the evidence is sufficient to rebut it. As to the second question, Utah recognizes the "enhanced injury" theory of tort liability outlined in section 16(a) of the Restatement (Third) of Torts: Products Liability.

15. Restatement (Third) of Torts: Products Liability § 16(a) (1998).

¶ 22 Chief Justice DURHAM, Associate Chief Justice WILKINS, Justice PARRISH, and Justice NEHRING concur in Justice DURRANT's opinion.