2008 UT 60

Lemanda Lillian MECHAM,
Plaintiff and Appellee,

v.

Sean D. FRAZIER and David L. Johnson,
Defendants and Appellants.

No. 20070730.

Supreme Court of Utah.

Aug. 29, 2008.

Cory B. Mattson, Sandy, for plaintiff.

Mark L. Shurtleff, Att'y Gen., J. Clifford Petersen, Scott D. Cheney, Brent A. Burnett, Asst. Att'ys Gen., Salt Lake City, for defendants.

PARRISH, Justice:

## INTRODUCTION

¶ 1 This case presents two certified questions from the Tenth Circuit Court of Appeals: (1) Does the Utah Governmental Immunity Act ("UGIA") confer to state officers immunity from suit or immunity from liability? and (2) Does the UGIA require that a notice of claim against state officials in their individual capacity expressly aver "fraud" or "malice"? We conclude (1) that the UGIA confers immunity from suit to state officers and (2) that the UGIA does not require that a notice of claim against state officials in their individual capacity expressly aver "fraud" or "malice."

## BACKGROUND

¶ 2 "We accept as true the facts described by the [Tenth Circuit] in the certification order."[1] Accordingly, we recite the facts as contained therein.

¶ 3 On February 23, 2003, Utah Highway Patrol Trooper Sean Frazier pulled over Lemanda Mecham for speeding and not wearing her seat belt. When Frazier asked for Mecham's license, Mecham provided it. Frazier checked the license with dispatchers and was told that it had been suspended. Mecham denied that there was any problem with her license and refused Frazier's repeated requests that she exit her car. Instead, Mec-

---

1. *Robert J. DeBry & Assocs., P.C. v. Qwest Dex, Inc.*, 2006 UT 41, ¶ 2, 144 P.3d 1079 (alteration in original) (internal quotation marks omitted).

ham ordered Frazier to call backup to prove his identity as a police officer. Frazier did so, and Trooper David Johnson arrived as backup. But even after Johnson arrived, Mecham still refused to exit her car. After approximately fifty minutes of argument, the troopers subdued Mecham with pepper spray and pulled her from her car.

¶4 In January 2004, pursuant to the UGIA,[2] Mecham filed a notice of claim against Frazier and Johnson, alleging violations of state law. She subsequently filed a complaint in federal district court, alleging that the troopers had used excessive force. Her complaint included both federal and state claims.

¶5 Frazier and Johnson moved to dismiss all claims. The federal district court denied the motion as to the federal claim but granted the motion as to the state law claims, ruling that the complaint did not aver sufficient facts upon which relief could be granted. The court did, however, grant Mecham leave to amend her complaint to cure the deficiency.

¶6 Mecham filed an amended complaint, alleging a federal claim under 42 U.S.C. § 1983 and seven state law claims. The troopers moved to dismiss the state law claims, arguing that Mecham had not complied with the notice requirements of the UGIA, leaving the court without jurisdiction to entertain her state law claims. The district court denied the motion, and the troopers appealed to the Tenth Circuit Court of Appeals.

¶7 The Tenth Circuit entered a Show Cause Order on the issue of whether the district court's denial of the motion to dismiss was immediately appealable. Following briefing and oral argument, the Tenth Circuit determined that the issue required resolution by this court. Accordingly, the Tenth Circuit certified to this court two questions: (1) "Does the [UGIA] confer to state officers an immunity from suit or merely an immunity from liability?" and (2) "Does the [UGIA] require that a Notice of Claim against state officials in their individual capacity expressly aver 'fraud' or 'malice'?"

¶8 We have jurisdiction over certified questions of state law pursuant to Utah Code section 78A–3–102(1) (2008).

## STANDARD OF REVIEW

¶9 When answering a certified question from a federal court, "traditional standards of review do not apply" because we are not asked to "affirm or reverse a lower court's decision."[3] We do not resolve the underlying dispute; rather, "we answer the legal questions presented."[4]

## ANALYSIS

¶10 Here, we are asked to interpret provisions of the UGIA. "When interpreting a statute, we look first to its plain language."[5] "Only if we find some ambiguity [in the statute's plain language] need we look further, and only then need we seek guidance from the legislative history and relevant policy considerations."[6]

I. DOES THE UGIA CONFER TO STATE OFFICERS AN IMMUNITY FROM SUIT OR AN IMMUNITY FROM LIABILITY?

*A. The Importance of the Distinction Between Immunity from Suit and Immunity from Liability*

¶11 The distinction between immunity from suit and immunity from liability is

2. On July 1, 2004, the UGIA, Utah Code Ann. §§ 63–30–1 to –38 (1997), was reenacted as the Governmental Immunity Act of Utah, *id.* §§ 63–30d–101 to –904 (2004). Throughout this opinion, we cite to the former enactment because it was the version in effect at the time of the incident giving rise to Mecham's claims. *See Moss v. Pete Suazo Utah Athletic Comm'n,* 2007 UT 99, ¶1 n. 1, 175 P.3d 1042; *Grappendorf v. Pleasant Grove City,* 2007 UT 84, ¶3 n. 2, 173 P.3d 166.

3. *Egbert v. Nissan N. Am., Inc.,* 2007 UT 64, ¶7, 167 P.3d 1058 (internal quotation marks omitted).

4. *Id.* (internal quotation marks omitted).

5. *Munson v. Chamberlain,* 2007 UT 91, ¶12, 173 P.3d 848.

6. *Flake v. Flake (In re Estate of Flake),* 2003 UT 17, ¶25, 71 P.3d 589 (alteration in original) (citation and internal quotation marks omitted).

important to the federal courts because it defines their jurisdiction. Under the collateral order doctrine, federal appellate courts "have subject matter jurisdiction to hear appeals of orders denying motions to dismiss where the motions are based on immunity from suit." [7] They do not, however, have jurisdiction to hear appeals of orders denying claims of immunity from liability.[8] Thus, a federal appellate court's jurisdiction to hear an appeal turns on the scope of the immunity.[9]

▇ ¶ 12 When the claimed immunity derives from state law, the scope of the immunity—i.e., whether the immunity in question is immunity from suit or immunity from liability—is governed by state law.[10] Accordingly, the Tenth Circuit Court of Appeals has asked us to interpret the scope of the immunity conferred to state officials under the UGIA so that it can determine whether it has jurisdiction to hear the troopers' appeal. This is a question of first impression because, in Utah, there is no collateral order doctrine.[11] As a result, we have not had occasion to focus on the distinction between immunity from suit and immunity from liability under the UGIA.

### B. Government Employees and Immunity Under the UGIA

▇ ¶ 13 The UGIA clearly grants immunity from suit to governmental *entities.* Section 63–30–3, the first substantive provision in the UGIA, begins with the following statement: "Except as may be otherwise provided in this chapter, all governmental entities are immune from suit for any injury which results from the exercise of a governmental function...." [12] We have often referred to the immunity provided to governmental entities by the UGIA as a "blanket immunity" that protects the entities from suit unless a provision in the UGIA specifically waives that immunity.[13]

¶ 14 The UGIA does not contain a similarly explicit grant of immunity from suit to government *employees.* Nevertheless, section 63–30–4(3)(a) clearly provides that an action under the UGIA is a "plaintiff's exclusive remedy" for bringing suit against a government employee for an act occurring "during the performance of the employee's duties, within the scope of employment, or under the color of authority." [14] By making suit under the UGIA a plaintiff's sole remedy against a government employee, the legislature extended to government employees the blanket immunity from suit that was explicitly granted to government entities.

¶ 15 A government employee's immunity from suit, however, is subject to three exceptions,[15] one of which is relevant here: a government employee can be sued individually if the employee acts or fails to act due to

---

**7.** *Aspen Orthopaedics & Sports Med., LLC v. Aspen Valley Hosp. Dist.,* 353 F.3d 832, 837 (10th Cir.2003) (internal quotation marks omitted).

**8.** *See Decker v. IHC Hosp., Inc.,* 982 F.2d 433, 435 (10th Cir.1992); *see also Africa v. City of Philadelphia (In re City of Philadelphia Litig.),* 49 F.3d 945, 957 (3d Cir.1995) (stating that "[i]t is immunity from suits, rather than mere immunity from liability," that makes an order denying immunity immediately appealable).

**9.** *See Bailey v. Kennedy,* 349 F.3d 731, 738 (4th Cir.2003) ("We have jurisdiction over the denial of public officers' immunity if under state law, the immunity is an immunity from suit, but we lack such jurisdiction if it is an immunity from liability only." (internal quotation marks omitted) ).

**10.** *Aspen Orthopaedics,* 353 F.3d at 837 ("State law governs the scope of the immunity at issue....").

**11.** *See Tyler v. Dep't of Human Servs.,* 874 P.2d 119, 119–20 (Utah 1994) (declining to apply the federal collateral order doctrine).

**12.** Utah Code Ann. § 63–30–3(1) (1997).

**13.** *See, e.g., Moss v. Pete Suazo Utah Athletic Comm'n,* 2007 UT 99, ¶ 10, 175 P.3d 1042; *Lovendahl v. Jordan Sch. Dist.,* 2002 UT 130, ¶ 15, 63 P.3d 705.

**14.** Utah Code Ann. § 63–30–4(3) (Supp.2002).

**15.** The three exceptions are (1) when "the employee acted or failed to act through fraud or malice," (2) when the injury or damage resulted from the employee driving while under the influence of alcohol or drugs, or (3) when the employee intentionally or knowingly gave false testimony in a judicial or administrative proceeding. Utah Code Ann. § 63–30–4(3)(b); *id.* § 63–30–4(4). Because the second and third exceptions are not relevant here, we do not discuss them.

fraud or malice.[16] In order to successfully sue a government employee individually, a plaintiff must file a notice of claim with the proper government entity [17] that—as discussed in Part II of this opinion—contains an allegation of fraud or malice. When fraud or malice is properly alleged, the employee is not immune from suit and may be held personally liable if "it is established that . . . the employee acted or failed to act due to fraud or malice." [18] Accordingly, whether a notice of claim properly alleges fraud or malice raises questions regarding the employee's immunity from suit and not the employee's immunity from liability.

## II. DOES THE UGIA REQUIRE THAT A NOTICE OF CLAIM AGAINST STATE OFFICIALS IN THEIR INDIVIDUAL CAPACITIES EXPRESSLY AVER "FRAUD" OR "MALICE"?

¶ 16 The second question certified by the Tenth Circuit asks what degree of compliance is required to satisfy the notice of claim requirement of the UGIA. The troopers argue that, in order to assert a claim against a government employee, a claimant must "specifically allege" fraud or malice. In other words, the troopers' argument is that a proper notice of claim must contain the words "fraud" or "malice." Mecham, on the other hand, contends that the UGIA does not require a claimant to specifically state "fraud" or "malice" in the notice of claim. We agree with Mecham.

¶ 17 The notice of claim requirement is contained in section 63–30–11, which provides in part:

> Any person having a claim for injury against a governmental entity, or against its employee for an act or omission occurring during the performance of the employee's duties, within the scope of employment, or under color of authority shall file a written notice of claim with the entity before maintaining an action, regardless of whether or not the function giving rise to the claim is characterized as governmental.[19]

A notice of claim must contain (1) "a brief statement of the facts," (2) "the nature of the claim asserted," and (3) "the damages incurred by the claimant so far as they are known." [20] The purpose of the notice of claim requirement is to "provide[ ] the governmental entity an opportunity to correct the condition that caused the injury, evaluate the claim, and perhaps settle the matter without the expense of litigation." [21]

¶ 18 Utah courts require strict compliance with the notice of claim requirement of the UGIA.[22] Strict compliance mandates "adherence to all of the relevant provisions outlined in the [UGIA]." [23] Nevertheless, the courts will not "require more of a claimant than is required by the perti-

---

16. See id. § 63–30–4(3)–(4) (1997 & Supp.2002); *Nielson v. Gurley*, 888 P.2d 130, 135 (Utah Ct. App.1994) ("[I]f the employee acted or failed to act through malice or fraud, the employee cannot successfully invoke governmental immunity as an affirmative defense.").

17. Utah Code Ann. § 63–30–11(2) (Supp.2002) ("Any person having a claim for injury against a governmental entity, *or against its employee* . . . shall file a written notice of claim with the entity before maintaining an action . . . ." (emphasis added)); *Nielson*, 888 P.2d at 135–36 (holding that a plaintiff must comply with the notice of claim requirements in order to maintain an action against a government employee, even if the plaintiff claims that the employee acted with fraud or malice).

18. Utah Code Ann. § 63–30–4(4).

19. Utah Code Ann. § 63–30–11(2) (Supp.2002).

20. *Id.* § 63–30–11(3)(a). The current version of the Governmental Immunity Act of Utah contains a fourth requirement: the name of the government employee if the claim is being pursued against the employee individually. *Id.* § 63–30d–401(3)(a)(iv) (Supp.2007). Because this requirement was not part of the UGIA at the time of Mecham's claim, we do not include it in our discussion.

21. *Rushton v. Salt Lake County*, 1999 UT 36, ¶ 20, 977 P.2d 1201 (internal quotation marks omitted).

22. *Xiao Yang Li v. Univ. of Utah*, 2006 UT 57, ¶ 8, 144 P.3d 1142 ("When applying the notice provision in the past, we have called for strict compliance to the Immunity Act before determining that the State waived its immunity.").

23. *Id.*

nent statutory language."[24] For example, in *Xiao Yang Li v. University of Utah*, we held that a notice of claim met the requirements of the UGIA, even though the notice did not list the claimants' names.[25] We reasoned that because the UGIA did not "specify whether a notice of claim must include the names of each individual claimant," we could not override the legislature's prerogative in deciding "what information is necessary to give proper notice of a claim."[26] This is true, we reasoned, even when the notice of claim requirements may "hold little utility in providing actual notice to the State regarding the claims."[27]

¶ 19 The plain language of the UGIA does not require that a notice of claim against state officials in their individual capacity expressly aver "fraud" or "malice." As noted above, the UGIA requires that a notice of claim contain only (1) "a brief statement of the facts," (2) "the nature of the claim asserted," and (3) "the damages incurred by the claimant so far as they are known."[28] The question of whether a notice of claim must expressly use the words "fraud" or "malice" goes to the second requirement: "the nature of the claim asserted."[29] In *Houghton v. Department of Health*, we articulated what this requirement entails: "[A] plaintiff need only include enough specificity in the notice to inform as to the nature of the claim so that the defendant can appraise its potential liability."[30] Under this standard, the contents of the notice of claim must be sufficient to reasonably alert the governmental entity of the nature of the claim-that the claimant seeks to bring a cause of action against a government employee personally due to the employee's fraudulent or malicious conduct. This standard does not, however, require a recitation of particular words, such as "malice" or "fraud."

¶ 20 The troopers' argument on appeal—that a claimant must expressly use the words "fraud" or "malice" in a notice of claim—is based on the language in two Utah cases: *Thomas v. Lewis*[31] and *Straley v. Halliday*.[32] These two cases stand for the proposition that a claimant must *allege* fraud or malice in her notice of claim in order to maintain an action against a government employee personally.[33] The cases do not, however, stand for the proposition that the notice of claim must contain an incantation of the words "fraud" or "malice." An allegation of malice does not necessarily require the use of the word "malice," nor does an allegation of fraud necessarily require the use of the word "fraud." Whether a notice of claim contains an allegation of fraud or malice depends on the content of the notice as a whole, not on the use or nonuse of particular words. To accept the troopers' argument that a notice of claim must contain the words "fraud" or "malice" would "require more of a claimant than is required" by the UGIA.[34]

¶ 21 In sum, neither the plain language of the UGIA nor applicable precedent requires an incantation of the words "fraud" or "malice" in a notice of claim. The UGIA requires only "enough specificity in the notice to inform as to the nature of the claim so that the defendant can appraise its potential liability."[35] We therefore conclude that the UGIA does not require that a notice of claim

---

24. *Id.* ¶ 16.

25. *Id.* ¶¶ 3, 19.

26. *Id.* ¶¶ 15–16.

27. *Id.* ¶ 16.

28. Utah Code Ann. § 63–30–11(3)(a) (Supp. 2002).

29. *Id.* § 63–30–11(3)(a)(ii).

30. 2005 UT 63, ¶ 21, 125 P.3d 860 (internal quotation marks omitted).

31. 2001 UT 49, 26 P.3d 217.

32. 2000 UT App 38, 997 P.2d 338.

33. *Thomas*, 2001 UT 49, ¶ 20 n. 11 ("Under the Immunity Act, [the plaintiff] must ... allege fraud or malice."); *Straley*, 2000 UT App 38, ¶ 15 ("[The plaintiff's] action cannot be maintained against [the government employee] personally absent the allegation of fraud or malice.").

34. *Xiao Yang Li*, 2006 UT 57, ¶ 16.

35. *Houghton*, 2005 UT 63, ¶ 21 (internal quotation marks omitted).

against state officials in their individual capacity expressly aver "fraud" or "malice."

## CONCLUSION

¶ 22 We answer the Tenth Circuit's first question by concluding that the UGIA grants to government employees an immunity from suit. We answer the second question by concluding that although the UGIA requires strict compliance with the notice of claim requirements, this strict compliance does not require the use of specific words, such as "fraud" or "malice."

¶ 23 Chief Justice DURHAM, Associate Chief Justice DURRANT, Justice WILKINS, and Judge HANSEN concur in Justice Parrish's opinion.

¶ 24 Justice NEHRING does not participate herein; District Court Judge ROYAL I. HANSEN sat.