*This opinion is subject to revision before final
publication in the Pacific Reporter*

**2015 UT 68**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

GREGORY LYNN SMITH,
*Appellant,*

*v.*

UNITED STATES OF AMERICA,
*Appellee.*

No. 20131030
Filed August 11, 2015

On Certification from the
United States District Court for the District of Utah
The Honorable Dee V. Benson
No. 2:12-CV-00968-DB

Attorneys:

Steve S. Christensen, David M. Corbett, Craig L. Pankratz,
Salt Lake City, for appellant

David B. Barlow, Amy J. Oliver, Jeffrey E. Nelson,
Salt Lake City, for appellee

Sean D. Reyes, Att'y Gen., Bridget K. Romano, Solicitor Gen.,
Salt Lake City, for the State of Utah

JUSTICE PARRISH authored the opinion of the Court, in which
CHIEF JUSTICE DURRANT, ASSOCIATE CHIEF JUSTICE LEE,
JUSTICE DURHAM, and JUDGE TOOMEY joined.

Due to his retirement, JUSTICE NEHRING did not participate herein;
COURT OF APPEALS JUDGE KATE A. TOOMEY sat.

JUSTICE DENO G. HIMONAS became a member of the Court on
February 13, 2015, after oral argument in this matter, and
accordingly did not participate.

JUSTICE PARRISH, opinion of the Court:

## INTRODUCTION

¶1 For millennia, physicians have sworn, "With regard to healing the sick, . . . I will take care that they suffer no hurt or

damage."[1] And for perhaps just as long, the sick have sought redress when hurt or damage inevitably occur.[2] Caught in the middle, lawmakers have tried to strike a balance that provides redress for the injured while accounting for the concerns of the medical profession.[3]

¶2    In 1986, the Utah Legislature amended the Utah Health Care Malpractice Act, sections 78B-3-401 to -425 of the Utah Code, (the "Malpractice Act") and imposed a cap on noneconomic damages in medical malpractice cases.[4] But the Legislature did not explicitly account for the Utah Constitution's prohibition of such damage caps in wrongful-death cases.[5] Almost thirty years later, we find ourselves at the confluence of these provisions and have been asked by the United States District Court to resolve the conflict. That court has certified to us this question: Is the noneconomic damages cap in section 78B-3-410 of the Malpractice Act permissible as applied to wrongful-death cases under article XVI, section 5 of the Utah Constitution? We hold that it is not.

---

[1] *The Hippocratic Oath*, LONDON MED. REPOSITORY, MONTHLY J. & REV., Jan.–June 1825, at 258 (internal quotation marks omitted).

[2] *See Everard v. Hopkins*, (c. 1600) 80 Eng. Rep. 1164 (K.B.) 1164; 2 Bulstrode 332; DIETER GIESEN, INTERNATIONAL MEDICAL MALPRACTICE LAW 3 (1988).

[3] *See* B. Sonny Bal, *An Introduction to Medical Malpractice in the United States*, 467 U.S. MED. MALPRACTICE, Feb. 2009, at 339–40.

[4] 1986 Utah Laws 637–38. Many of our sister states have adopted similar damage caps in the context of medical malpractice. *E.g.*, CAL. CIV. CODE § 3333.2 (West 2015); COLO. REV. STAT. ANN. § 13-21-102.5 (West 2015); IND. CODE ANN. § 34-18-14-3 (West 2015); LA. REV. STAT. ANN. § 40:1299.42 (2014); NEB. REV. STAT. ANN. § 44-2825 (West 2015); N.M. STAT. ANN. § 41-5-6 (West 2015); N.C. GEN. STAT. ANN. § 90-21.19 (West 2015); OHIO REV. CODE ANN. § 2323.43 (West 2015); S.C. CODE ANN. § 15-32-220 (2015); S.D. CODIFIED LAWS § 21-3-11 (2015); VA. CODE ANN. § 8.01-581.15 (West 2015); WIS. STAT. ANN. § 893.55 (West 2015).

[5] At least six other states have similar constitutional protections for damages in wrongful-death cases. *See* ARIZ. CONST. art. XVIII, § 6; KY. CONST. § 54; N.Y. CONST. art. I, § 16; OKLA. CONST. art. XXIII, § 7; PA. CONST. art. III, § 18; WYO. CONST. art. 10, § 4.

## BACKGROUND

¶3  Gregory Lynn Smith's son, Gregory Lee Smith, died on October 22, 2010, of an acute drug intoxication involving the medications prescribed to him by medical staff at the VA medical center in Salt Lake City. The VA staff had prescribed the pain medications upon his discharge from the medical center after a back surgery.

¶4  Mr. Smith filed suit against the United States of America in the United States District Court for the District of Utah, alleging that VA medical staff negligently caused his son's death.[6] That court certified two questions to us:

> (1) Does the limitation on a plaintiff's recovery of noneconomic damages in Utah Code Ann. § 78B-3-410 apply to claims alleging wrongful death caused by medical malpractice?
>
> (2) If the answer to Question No. 1 is in the affirmative, is Utah Code Ann. § 78B-3-410 permissible under Article XVI, Section 5 of the Utah Constitution?[7]

We have jurisdiction to answer these questions pursuant to Utah Code section 78A-3-102(1).

## STANDARD OF REVIEW

¶5  On certification from a federal court, there is no prior decision and thus no standard of review.[8] We answer the legal questions presented and do not resolve the underlying dispute.[9]

## ANALYSIS

¶6  The United States District Court has asked us if the damages cap in section 78B-3-410 of the Malpractice Act is permissible under article XVI, section 5 of the Utah Constitution in

---

[6] Though not a party in the original case, the State of Utah has entered this litigation to support the constitutionality of the statute at issue. Because the State's arguments are parallel to those of the United States, we do not address them independently.

[7] Order Certifying Questions to the Utah Supreme Court at *4, *Smith v. United States*, No. 2:12-CV-00968-DB (D. Utah Nov. 4, 2013).

[8] *Egbert v. Nissan N. Am., Inc.*, 2007 UT 64, ¶ 7, 167 P.3d 1058.

[9] *Id.*

cases of medical malpractice that result in death. Article XVI, section 5 provides,

> The right of action to recover damages for injuries resulting in death, shall never be abrogated, and the amount recoverable shall not be subject to any statutory limitation, except in cases where compensation for injuries resulting in death is provided for by law.[10]

But the damages cap in section 78B-3-410 provides,

> In a malpractice action against a health care provider, an injured plaintiff may recover noneconomic losses to compensate for pain, suffering, and inconvenience. The amount of damages awarded for noneconomic loss may not exceed . . . $450,000.[11]

Our analysis proceeds in two parts. We hold that article XVI, section 5 protects both economic and certain noneconomic damages in wrongful-death cases and that its exception is not implicated except in the context of a scheme akin to workers' compensation. As a result, we conclude that the damages cap in section 78B-3-410 of the Malpractice Act is not constitutionally permissible as applied to wrongful-death cases.

## I. ARTICLE XVI, SECTION 5 OF THE UTAH CONSTITUTION

¶7     The interpretation of article XVI, section 5 turns on two distinct questions. First, what species of damages are protected? Second, when does the compensation exception apply?[12] We address

---

[10] UTAH CONST. art. XVI, § 5.

[11] UTAH CODE § 78B-3-410(1).

[12] The United States also argues that article XVI, section 5 is not generally applicable. It points out that article XVI is titled "Labor" and that other sections in that article provide protections for laborers. It then suggests that the damages-cap prohibition applies only in cases where a party seeks to hold an employer liable for the wrongful death of its employee. We are not persuaded. The United States' proposed construction is wholly unsupported by the plain language of section 5. We will not look beyond the plain language of the operative provision because "[w]here the language of [a constitutional] provision is plain, that is to say, where its meaning as

(continued...)

each question in turn.

### A. Article XVI, Section 5 Protects Economic and Certain Noneconomic Damages

¶8    The parties agree that article XVI, section 5 protects those damages that were available at the time of its adoption. Indeed, our case law has so held for almost one hundred years.[13] But the parties disagree as to the nature of those protected damages. Both parties cite opinions by our predecessors on the territorial court discussing the damages then available in wrongful-death actions, including the seminal case of *Webb v. Denver & R.G.W. Railway*.[14] However, they disagree about how to read them.

¶9    A particular point of disagreement is the pronouncement in *Webb* that "only the pecuniary loss sustained can be compensated" in a suit for wrongful death.[15] Mr. Smith argues that "pecuniary" as used in that case includes economic and noneconomic damages. The United States argues that pecuniary damages are limited to economic damages. We agree with Mr. Smith and conclude that the damages allowed under *Webb* and its progeny are not so limited.

¶10   To understand *Webb* and the scope of protection afforded by section 5 of article XVI, we begin with the legal landscape in which the constitutional protection was enacted. At common law, a cause of action for personal injury—including fatal injury—died with the injured party, leaving survivors with no recourse.[16] But Lord Campbell's Act, adopted in 1846 by the British parliament, abrogated this harsh rule and vested a cause of action for wrongful

---

[12](...continued) intended or understood by its framers is beyond debate, we need proceed no further." *Am. Bush v. City of South Salt Lake*, 2006 UT 40, ¶ 87, 140 P.3d 1235.

[13] *Garfield Smelting Co. v. Indus. Comm'n*, 178 P. 57, 59 (Utah 1918) ("[T]he Constitution clearly prohibits the Legislature from abrogating the 'right of action,' [therefore] it becomes necessary to inquire what that right was and who enjoyed it at the time the Constitution was adopted by the people of this state.").

[14] 24 P. 616 (Utah Terr. 1890).

[15] *Id.* at 618.

[16] *Id.* at 616.

death in the heirs of the deceased.[17] This new cause of action rippled through the common law world resulting in the enactment of a materially identical statute in the Territory of Utah in 1874.[18] That statute provided,

> *Be it enacted by the Governor and Legislative Assembly of the Territory of Utah*: That whenever the death of a person shall be caused by wrongful act, neglect or default, and the act, neglect or default is such as would, if the death had not ensued, have entitled the party injured to maintain an action and recover damages in respect thereof, then, and in every such case, the person who, or the company or corporation which, would have been liable if death had not ensued, shall be liable to an action for damages, notwithstanding the death of the person injured, and although the death shall have been caused under such circumstances as amount in law to felony.

> SEC. 2. That every such action shall be brought by, and in the names of the personal representatives of such deceased person . . . : *And provided further*, that the damages so recovered shall not in any case exceed the sum of ten thousand dollars.[19]

Ten years later, the territorial legislature enacted a new wrongful-death statute. The new statute provided,

> SEC. 234. When the death of a person not being a minor is caused by the wrongful act or neglect of another, his heirs or personal representatives may maintain an action for damages against the person causing the death, or if such person be employed by another person who is responsible for his conduct, then also against such other person. In every action under this and the preceding section, such damages may be given as under all circumstances of the case

---

[17] *Id.* at 616–17; *Fatal Accidents Act*, 1846, 9 & 10 Vict. c. 93 (Eng.).

[18] *Webb*, 24 P. at 617.

[19] 1874 Utah Laws 9–10 (codified at COMP. LAWS UTAH 1876, §§ 1216–17; COMP. LAWS UTAH 1888, §§ 2961–62).

may be just.[20]

Unlike its predecessor, the new statute contained no limit on the amount of damages. It was against the backdrop of this statute that the constitutional provision prohibiting damage caps in wrongful-death cases went into affect in 1896 when Utah became a state.[21]

¶11 The first case to address the issue of allowable damages under the revised Utah statute was the 1890 case of *Webb v. Denver & R.G.W. Railway*, which both parties recognize as the seminal case on this question. In that case, our predecessors recognized

> the rule almost uniformly laid down by the courts of England and the United States to the effect that only the *pecuniary* loss sustained can be compensated for, and that no compensation can be given for the mental anguish or suffering of the heirs or next of kin of the deceased.[22]

The court's inclusion of the word *pecuniary* is the basis for the substantial differences in the parties' understanding of the holding in *Webb*. The word *pecuniary* has the same meaning today as it did in the late nineteenth century—"consisting of or measured in money" or "of or relating to money."[23] But the court in *Webb* stated that "the word 'pecuniary' in this [context] is not construed in any

---

[20] 1884 Utah Laws 193–94 (codified at COMP. LAWS UTAH 1888, § 3179). The United States argues that a cause of action for wrongful death resulting from medical malpractice filed between 1884 and 1896 would have arisen under the common law, rather than this statute. But the United States has cited no Utah case recognizing a common law cause of action for medical malpractice. And when the territorial legislature enacted the wrongful-death statute in 1884, it instructed that statutory enactments should be liberally construed to preempt the common law. 1884 Utah Laws 154–55. Accordingly, we are persuaded that it is this statute that would have governed a suit for wrongful death arising from alleged medical malpractice at the time article XVI, section 5 was enacted.

[21] UTAH CONST. ANN. art. XVI, § 5.

[22] *Webb*, 24 P. at 618 (emphasis added).

[23] MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 912 (11th ed. 2012); *accord* BLACK'S LAW DICTIONARY 882 (1891); WEBSTER'S COLLEGIATE DICTIONARY 601 (1898); WEBSTER'S COMMON SCHOOL DICTIONARY 253 (1892).

very strict sense."[24] Indeed, the court held that there is "great[] liberality" in allowable damages under the statute and they "include every element of injury that may be deemed to have a pecuniary value, although this value may not be susceptible of positive proof, and can only be vaguely estimated."[25] It further stated that even though "the pecuniary injury . . . cannot be proved with even an approach to accuracy, . . . [it is] to be estimated and awarded, for . . . the jury is to give such damages as may be just under all the circumstances."[26] The court then listed various species of allowable damages, including the loss of nurture, intellectual and moral training, and society.[27] These damages are not pecuniary as that term is commonly understood. We are therefore persuaded that the badge *pecuniary*, as that word is commonly understood, is not helpful in identifying the damages that were available in wrongful-death cases at the time the Utah Constitution was adopted. Instead, we must look to the species of damages allowed by the court under the statute.

¶12 In the years leading to the adoption of the Utah Constitution, the court upheld a broad range of damages for wrongful death, including both economic and noneconomic damages. In the arena of economic damages, the court held that the jury should consider the financial contribution the deceased reasonably would have provided to his survivors based on "his ability to earn wages and provide for his family," "the number in the family dependent upon him for support and previously provided for," "the number and ages of the children," "the age and health of

---

[24] *Webb*, 24 P. at 618.

[25] *Id.*; *see also Chilton v. Union Pac. Ry.*, 29 P. 963, 964 (Utah Terr. 1892) ("Human capacity can make but vague and indefinite estimates of [the] value in dollars and cents [of the loss of the society, the advice, the kindness, and good treatment of a husband and father], but justice demands that it shall be done."); BLACK'S LAW DICTIONARY 315 (2d ed. 1910) (defining "[p]ecuniary damages" as damages "[s]uch as can be estimated in and compensated by money; not merely the loss of money or salable property or rights, but all such loss, deprivation or injury as can be the subject of calculation and of recompense in money").

[26] *Webb*, 24 P. at 618.

[27] *Id.*

his wife, and age and health of the deceased."[28] In short, the court allowed recovery for loss of the reasonably-expected net financial productivity of the deceased and the financial cost occasioned by his death.[29]

¶13 Significantly for our purposes, the court also allowed damages for certain noneconomic losses. For example, the court allowed recovery for "the loss of nurture, [that is] the intellectual, moral, and physical training" of a parent and "the loss of the society of a near relative," including "the loss of [a] father by children who are of full age living away from the home of the deceased and supporting themselves."[30] The court also upheld instructions for the jury to "take into account the loss of society, and the comfort" that surviving parents would have gained by raising the deceased child;[31] to "include any loss which the widow of [the] deceased and his daughter have sustained or may hereafter sustain by being deprived of the support, care, nurture, companionship, assistance, and protection which . . . they would have received from the deceased if he had not been killed";[32] and to award damages for the loss of "the benefits from the associations, comforts, and pleasures that . . . [the decedent's survivors] would have received from him

---

[28] *Pool v. S. Pac. R.R.*, 26 P. 654, 656 (Utah Terr. 1891).

[29] *See Webb*, 24 P. at 618 (recognizing that survivors may recover for "the loss of expected services," even if the deceased was "under no legal or moral obligation to render service or support, [but] the circumstances shown render it probable it [would have been] rendered"); *see also Jones v. Carvell*, 641 P.2d 105, 107 (Utah 1982) ("Under Utah law a parent may recover for the wrongful death of a child such [economic] damages as funeral and medical expenses, the value of the services he might have rendered to the household, and the amount of money the deceased child might have earned, if its projected income would have exceeded the cost of its maintenance and care." (citation omitted)); BLACK'S LAW DICTIONARY 589 (9th ed. 2009) (defining economic loss); 25A C.J.S. *Death* § 285 (2015) (discussing economic loss).

[30] *Webb*, 24 P. at 618.

[31] *Hyde v. Union Pac. Ry.*, 26 P. 979, 980 (Utah Terr. 1891).

[32] *Wells v. Denver & R.G.W. Ry.*, 27 P. 688, 689 (Utah Terr. 1891) (internal quotation marks omitted).

had his life been spared."[33] This court continued a broad conception of allowable damages by upholding similar awards after statehood.[34]

¶14  While the court clearly allowed damages for noneconomic losses, such damages were not unlimited. In *Webb*, the court held that "no compensation can be given for the mental anguish or suffering of the heirs or next of kin of the deceased."[35] The opinion in *Webb* notes the same concerns expressed in the seminal English case on this issue,[36] namely that "if the mental suffering of the heirs is to be taken into the account, and compensated for in money, the difficulty [of proving or estimating the pecuniary loss] is infinitely increased."[37] In short, the court held that this kind of loss is "too remote and sentimental to be a proper element of damage under the statute."[38]

¶15  It is against this legal backdrop that the framers adopted the constitutional provision protecting the recovery of damages for

---

[33] *Chilton*, 29 P. at 964.

[34] *See English v. S. Pac. Co.*, 45 P. 47, 51 (Utah 1896); *Corbett v. Or. Short Line R.R.*, 71 P. 1065, 1066–67 (Utah 1903); *Rogers v. Rio Grande W. Ry. Co.*, 90 P. 1075, 1078–79 (Utah 1907); *Spiking v. Consol. Ry. & Power Co.*, 93 P. 838, 846–47 (Utah 1908); *Evans v. Or. Short Line R.R.*, 108 P. 638, 641–42 (Utah 1910); *White v. Shipley*, 160 P. 441, 443 (Utah 1916); *Moore v. Utah Idaho Cent. R.R.*, 174 P. 873, 880 (Utah 1918); *Burbidge v. Utah Light & Traction Co.*, 196 P. 556, 558 (Utah 1921) ("Under our statute, both the wife and the children were heirs of the deceased, and as such were entitled to recover, not only for the loss of support, companionship, and the assistance he would naturally and probably be to them but were entitled to all the pecuniary loss that they may have sustained by reason of his death, which could be established with reasonable certainty in view of all the circumstances pertaining to the subject-matter." (internal quotation marks omitted)).

[35] *Webb*, 24 P. at 618; *see also* FRANCIS B. TIFFANY, DEATH BY WRONGFUL ACT §§ 154, 156 (1893); WILLIAM B. HALE, HANDBOOK ON THE LAW OF DAMAGES §§ 127, 129 (1896). While secondary sources from this era are helpful, they are in tension with Utah case law on some points. And on these points, Utah case law controls.

[36] *Blake v. Midland Ry.*, (1852) 118 Eng. Rep. 35; 18 Q.B. 93.

[37] *Webb*, 24 P. at 618.

[38] *Id.*

wrongful death. Accordingly, article XVI, section 5 protects recovery of economic damages—compensation for the loss of the reasonably-anticipated net financial productivity of the deceased and the costs occasioned by the death. It also protects recovery of certain noneconomic damages designed to compensate for the loss of the assistance, association, care, comfort, companionship, nurture, pleasure, protection, society, and support of the deceased. Because such damages were available at the time our constitution was adopted, they "shall not be subject to any statutory limitation." But those damages for the mental anguish and suffering of survivors, which were not available at the time of statehood, may be limited by the Legislature.

*B. The Compensation Exception to Article XVI, Section 5 Applies Only to Schemes Akin to Workers' Compensation*

¶16 Having defined the types of wrongful-death damages protected by article XVI, section 5, we proceed to consider whether the damages at issue fall within the exception to the constitutional protection. Article XVI, section 5 excepts from constitutional protection "cases where *compensation* for injuries resulting in death is provided for by law."[39] The parties disagree with respect to the scope of this exception. Their disagreement turns on the meaning of "compensation." Mr. Smith argues that "compensation" means something akin to a workers' compensation scheme, while the United States argues that "compensation" has a broader meaning and includes any form of recovery allowed by law.[40] We agree with

---

[39] UTAH CONST. art. XVI, § 5 (emphasis added).

[40] In so arguing, the United States relies on our opinion in *Parks v. Utah Transit Authority*, 2002 UT 55, ¶ 17, 53 P.3d 473. That opinion reasons that article XVI, section 5's compensation "exception applies [in the context of cases arising under the the Governmental Immunity Act] where the legislature has in the Act fixed the plaintiffs' remedy." *Id.* We are not persuaded that this pronouncement is inconsistent with our holding today, but we take this opportunity to resolve any doubt. That cursory pronouncement in *Parks* is dicta without any analysis. And it was similarly unsupported dicta when repeated in *Tindley v. Salt Lake City School District*, 2005 UT 30, ¶ 36, 116 P.3d 295. Both of these cases relied upon and were resolved by *Tiede v. State*, 915 P.2d 500 (Utah 1996), which held that the Governmental Immunity Act did not violate article XVI, section 5 because

(continued...)

Mr. Smith.

¶17    The compensation exception to article XVI, section 5 does not immunize the damages cap of the Malpractice Act from constitutional challenge. The constitutional provision differentiates between "damages" and "compensation." The word *damage* defines the constitutional protection; the word *compensation* defines the scope of the exception. Accordingly, the two terms must mean something different otherwise the exception would swallow the rule. We gain insight into the meaning of the compensation exception by its context. The compensation exception was not part of the original constitution, but was added through an amendment made in 1921.[41] The exception remedied the inconsistency between the unamended constitutional provision and the Workmen's Compensation Act of 1917.[42] Thus, as we have previously held, the term *compensation*, as used in amended section 5, carries the same meaning that it had in the Workmen's Compensation Act, namely "any payment required by the act to be made to a workman or to his dependents, or for their benefit, or into the state treasury for the special purposes of the compensation act."[43]

¶18    The United States argues that the exception applies because the Smiths are still entitled to recover damages (compensation) up to the amount of the cap. In other words, it suggests that the exception empowers the Legislature to cap damages as long as the cap is some number greater than zero. But the practical impact of this proposed construction is completely at odds with the constitutional language. Article XVI, section 5 enshrines two separate protections on the right to recover for wrongful death. The first is that the right to recover damages "shall never be abrogated." The second is that the amount of the damages "shall not be subject to any statutory limitation." The United States' suggestion that the right to recover damages up to the level of the cap constitutes

---

[40](...continued)
of the State's sovereign immunity at the time the constitution was ratified. We accordingly disavow the dicta in paragraph 17 of *Parks* and the dicta in *Tindley* that cites it.

[41] UTAH CONST. ANN. art. XVI, § 5.

[42] *Henrie v. Rocky Mountain Packing Corp.*, 196 P.2d 487, 492 (Utah 1948).

[43] *Id.* at 493.

compensation ignores the two separate protections and would, in fact, render the second constitutional guarantee a nullity.

¶19 The United States' proposed construction is also flawed because it conflates the concept of damages with that of compensation. The fact that the Smiths may be entitled to recover some damages under the cap does not transform those recoverable damages into compensation. In fact, the terms *damages* and *compensation* have distinct meanings. The word *compensation* means "making amends" or "that which is necessary to restore an injured party to his former position."[44] In contrast, the word *damages* means "[a] pecuniary compensation . . . , which may be recovered in the courts by any person who has suffered loss, detriment, or injury . . . through the unlawful act or omission or negligence of another."[45] As *Black's Law Dictionary* stated in 1891 and repeated in 1910, "[d]amages [are] amends exacted from a wrong-doer for a tort" but "[c]ompensation is amends for something which was taken without the owner's choice, yet without commission of a tort."[46] Thus, compensation is distinguished from damages because damages require fault.[47] Because any damages awardable within the cap are based upon a medical provider's fault, the fact of their awardability does not make the constitutional exception available. Accordingly, we hold that the compensation exception to article XVI, section 5 of the constitution does not apply in cases implicating the damages cap of the Malpractice Act.

---

[44] BLACK'S LAW DICTIONARY 232 (2d ed. 1910); *accord* BLACK'S LAW DICTIONARY 237–38 (1891).

[45] BLACK'S LAW DICTIONARY 316 (1891); *accord* BLACK'S LAW DICTIONARY 314 (2d ed. 1910).

[46] BLACK'S LAW DICTIONARY 238 (1891); *accord* BLACK'S LAW DICTIONARY 232 (2d ed. 1910).

[47] *Star v. Indus. Comm'n*, 615 P.2d 436, 438 (Utah 1980) ("Conceptually, compensation and damages are different. Damages are based upon fault, are generally limited only by the findings of the jury, and are payable in death cases to the heirs or personal representatives without regard to dependency. In contrast, compensation, generally, has no relation to fault, is fixed or limited by statute, and is payable to dependents only.").

## II. SECTION 78B-3-410 OF THE UTAH CODE IS UNCONSTITUTIONAL AS APPLIED TO WRONGFUL-DEATH CASES

¶20 The Malpractice Act limits noneconomic damages in a "malpractice action," including damages in those cases of malpractice that result in death.[48] Section 78B-3-410(1) of the Utah Code provides,

> In a malpractice action against a health care provider, an injured plaintiff may recover noneconomic losses to compensate for pain, suffering, and inconvenience. The amount of damages awarded for noneconomic loss may not exceed . . . $450,000.

The parties agree that this statute cannot constitutionally limit damages that article XVI, section 5 of the Utah Constitution protects. But they disagree on how to resolve the clear tension between the constitution and the statute. Mr. Smith has proposed three alternatives for our consideration. First, he suggests that we construe the cap as inapplicable in all wrongful-death cases. Second, he proposes that we construe the cap to limit only those damage awards that are not protected by the constitution. Finally, if we reject his first two alternatives, he argues that we must declare the cap unconstitutional as applied to wrongful-death cases. The United States soundly rebuts the first two of Mr. Smith's proposed alternatives by pointing out that they are foreclosed by the plain language of the Malpractice Act. But the United States proposes no other option to avoid declaring the cap unconstitutional as applied to wrongful-death cases. Accordingly, we hold that the damages cap in section 78B-3-410 of the Malpractice Act is unconstitutional as applied to cases of wrongful death.

¶21 When construing a statute, we seek primarily to give effect to the intent of the Legislature.[49] To begin, we look to the plain language of the specific provision within its context.[50] And because we presume that the Legislature intends a statute to complement, not contradict, constitutional protections, we attempt to construe it

---

[48] UTAH CODE § 78B-3-410(1); *see id.* § 78B-3-403(17).

[49] *LPI Servs. v. McGee*, 2009 UT 41, ¶ 11, 215 P.3d 135.

[50] *Id.*

accordingly.[51] We address Mr. Smith's three alternatives in turn.

¶22   First, Mr. Smith reasons that the Legislature never intended for the Malpractice Act to apply to wrongful-death cases because it did not explicitly reference the cap in the wrongful-death statute itself. Mr. Smith points to the consortium statute as an example. In that statute, the Legislature provided that "[d]amages awarded for loss of consortium . . . may not exceed any applicable statutory limit on noneconomic damages, including [the damages cap in] Section 78B-3-410" of the Malpractice Act.[52] No such explicit reference to the cap appears in the wrongful-death statute.[53]

¶23   The United States soundly rebuts this reasoning on the basis of the express scope of the cap. The first sentence denotes the cap's scope: "[i]n a malpractice action against a health care provider."[54] And the definition section defines "[m]alpractice action against a health care provider" as "any action against a health care provider, whether in contract, tort, breach of warranty, *wrongful death*, or otherwise."[55] Further, there is nothing in the language of the cap indicating that it applies only if it is expressly referenced in the statute giving rise to the underlying cause of action. In short, the plain language of the Malpractice Act forecloses any reading under which it is inapplicable as a whole to wrongful-death cases.

¶24   Mr. Smith's second proposed construction would narrow the application of the cap to apply only to those damages that are not protected by the constitution. The Malpractice Act provides that

> an injured plaintiff may recover *noneconomic losses to compensate for pain, suffering, and inconvenience.* The amount of damages awarded for noneconomic loss may not exceed . . . $450,000.[56]

Mr. Smith proposes that we narrowly construe the phrase "noneconomic losses to compensate for pain, suffering, and

---

[51] *Uzelac v. Thurgood* (*In re Estate of S.T.T.*), 2006 UT 46, ¶ 26, 144 P.3d 1083.

[52] UTAH CODE § 30-2-11(7).

[53] *See id.* § 78B-3-106.

[54] *Id.* § 78B-3-410(1).

[55] *Id.* § 78B-3-403(17) (emphasis added).

[56] *Id.* § 78B-3-410(1) (emphasis added).

inconvenience" to refer only to damages for "mental anguish and suffering" because the latter are not protected by the constitution.

¶25  As the United States points out, this construction results in a reading of the Malpractice Act that is contrary to our precedent. We previously have noted that damages for "pain, suffering, and inconvenience" provided by this statute "amount to the same measure" as noneconomic loss or general damages.[57] Thus, Mr. Smith's proposed reading of "pain, suffering, and inconvenience" as a subset of noneconomic damages is inconsistent with our precedent. And we will not depart from our common-sense precedent to adopt an unnatural reading of the statutory text.

¶26 Moreover, Mr. Smith's second proposed construction would vitiate the policy addressed by the Legislature in the Malpractice Act as a whole. The damages cap applies to all medical malpractice cases, only a small subset of which involve wrongful death. Were we to narrowly construe the damages cap on the basis of the constitutional protection for wrongful-death damages, that narrow construction would impact the scope of the cap in all medical malpractice cases, not just those involving wrongful death. This approach would unduly narrow the damages cap imposed by the Legislature. We are unwilling to sacrifice the cap's broader operation in order to avoid its application in the limited number of wrongful-death cases with impermissible constitutional implications. Accordingly, we reject Mr. Smith's second proposed construction.

¶27 Finally, Mr. Smith reasons that if the statute cannot be saved through either of the first two alternatives, it must be declared unconstitutional as applied to the class of cases involving damages for wrongful death. The United States has proposed no construction to stave off this alternative. Accordingly, we hold that the damages cap in section 78B-3-410 of the Malpractice Act is unconstitutional as applied to wrongful-death cases.

¶28 We are generally reluctant to strike down statutory enactments. But declaring the damages cap unconstitutional in this narrow subset of cases is the only viable approach given the conflicting constitutional and statutory language. The Malpractice Act provides broad procedural safeguards for the medical

---

[57] *Judd v. Drezga*, 2004 UT 91, ¶ 4, 103 P.3d 135.

profession that are applicable in all malpractice cases.[58] The Legislature clearly intended for these protections to apply in wrongful-death cases. But when it inserted the damages cap in 1986, it did not account for the constitutionally significant differences between the operation of the cap inside and outside of the wrongful-death context. Had the Legislature intended to abrogate the constitutional protection for wrongful-death damages in the context of medical malpractice, it could have sought an exception to article XVI, section 5 as it did to accommodate the workers' compensation scheme some sixty years earlier. But it did not. Thus, limiting the application of the cap to cases outside the wrongful-death context allows the broadest operation of the legislative scheme.

¶29 We note that our holding is limited to those damages that are protected by article XVI, section 5. It has no application in those cases where the alleged medical malpractice does not result in death. And the remaining sections of the Malpractice Act, which have not been challenged in this case, remain in full force in wrongful-death cases.

## CONCLUSION

¶30 The United States District Court has asked us to resolve the conflict between the prohibition of damage caps in article XVI, section 5 of the Utah Constitution with the cap on noneconomic damages in section 78B-3-410 of the Malpractice Act. The conflict between these two provisions comes to a head in this case, where the alleged medical malpractice resulted in death. We hold that the damages cap in section 78B-3-410 of the Malpractice Act is unconstitutional as applied to cases of wrongful death under article XVI, section 5 of the Utah Constitution.

---

[58] *See, e.g.*, UTAH CODE § 78B-3-404 (establishing a statute of limitations); *id.* § 78B-3-407(1) (prohibiting malpractice actions "brought on the basis of the consequences resulting from the refusal of a child's parent or guardian to consent to the child's health care"); *id.* § 78B-3-409 (prohibiting a complaint with a specific dollar amount of requested damages).