**J. Morrow ELIAS, Plaintiff
and Respondent,**

v.

**James LEA and Laura Lea, Defendants,
Counter Claimants, Third–Party
Plaintiffs and Appellants,**

v.

**J. Morrow Elias and Mrs. J. Morrow
Elias, Third–Party Defendants
and Respondents.**

No. 14885.

Supreme Court of Utah.

Feb. 7, 1978.

ELLETT, Chief Justice:

Mr. and Mrs. Lea appeal from a judgment entered by the trial court quieting title to a twenty-eight foot strip of land in Mr. Elias who was the record owner thereof. The parties are adjoining landowners and their deeds call for a common boundary line to the east of a fence which has had a varied existence since it was erected.

The trial court refused to quiet title in Mr. and Mrs. Lea on their claim of boundary by acquiescence, and they now bring this appeal.

There is nothing in the record to show that any agreement ever existed between the owners of the two tracts of land to the effect that the fence was the true boundary between the parcels. Nor was there any evidence to indicate that the fence was intended to be a dividing line since it was originally erected by the common owner of the two parcels of land.

In 1954, when the predecessor in interest of the respondent purchased the land, there existed only two stubs of posts in what had originally been a fence built by the owner of both pieces of property for his own purposes. Thereafter, a wooden fence was erected, but the family of the respondent had access to his property on both sides thereof; never at any time did he consent to having the fence as the eastern boundary of his land. In 1973, when a chain link fence was erected which deprived the respondent and his family of

access to their property to the east, this lawsuit was initiated.

The appellants would have us reverse the trial court in presumptions which more nearly indicate adverse possession than they do acquiescence. The very presumptions relied upon do not apply until the following elements are established by a preponderance of the evidence:

(1) Occupation up to a visible line marked definitely by some monument,

(2) Acquiescence in that line as a boundary

(a) by adjoining land owners, and

(b) for a long period of time.

■ Appellants have failed in their proof of acquiescence in the fence as a boundary. As pointed out in the case of *Riter v. Cayias,*[1] the party losing the property must have knowledge that his property is being claimed by another. There is no proof that the respondent or any of his predecessors in interest ever had any knowledge that the property east of the fence was being claimed by another. This statement is bolstered by the finding of the trial court, to wit:

3. At the time that defendants received the conveyance referred to in the previous paragraph, a fence existed along a line going generally north and south approximately nine feet west of what is now the east line of Lot 5, Millbrook Terrace Subdivision, said line being close to the line on which a chain link fence erected by defendants in 1973, now exists. Neither plaintiff and third-party defendants J. Morrow Elias and Susan Lynn Elias, nor their predecessors in title have acquiesced in said line as a boundary.

The appellants, urge us to overlook the finding of the trial court who saw and heard the witnesses and render our own findings at variance therewith. They urge us to do so because of the provisions of Article VIII, Section 9 of the Utah Constitution which so far as material, reads as follows:

... In equity cases the appeal may be on questions of both law and fact; in cases at law the appeal shall be on questions of law alone....

■ At the time the Constitution was adopted, equity matters were submitted on depositions;[2] therefore, members of the Supreme Court were just as capable of determining the facts in an equity case as was the trial judge. By our court decision we have continued to consider the facts of an equity case or appeal, but we do not substitute our judgment of what the facts are unless the ruling of the court below is clearly against the weight of the evidence.[3]

In the instant matter, the ruling of the trial court was based on proper, competent evidence and it is hereby affirmed. Costs are awarded to the respondent.

I CONCUR: J. ALLAN CROCKETT, Justice.

HENRIOD, Retired Justice, Concurring:

I concur in the conclusion reached by Mr. Chief Justice Ellett in the main opinion. Both parties claimed title through Wooley Company. That company owned both tracts, whence the fence possibly could not have been a boundary. This fence was burned a time or two, but fire had nothing much to do with who thought was or was not done to the title. To reject the trial court's conclusion quieting title, in nay opinion is not compelling on the facts here, irrespective of the threadbare Constitutional admonition (Art. VIII, Sec.9) about reviewing the facts as well as the law,—a practical bit of legerdemain employed for convenience. *Stanley v. Stanley,* is a manly primer, but withal the cases to date, the rule seems to have been laid down that on appellate review, the trial court's decision will be affirmed if there is substantial, competent, admissible evidence to support it,—whether it be the collective confusion of the jury, or the isolated, appealed and

1. 19 Utah 2d 358, 431 P.2d 788 (1967).

2. Vol. II, Proceedings of Constitutional Convention, p. 1507. See my dissent in *First Security Bank v. Demiris,* 10 Utah 2d 405, 412, 354 P.2d 97 (1960).

3. *Metropolitan Investment Co. v. Sine,* 14 Utah 2d 36, 376 P.2d 940 (1962); *Del Porto v. Nicolo,* 27 Utah 2d 286, 495 P.2d 811 (1972).

therefore disputed interdiction of the court,—be it that of the Chancellor or that of the Common Pleas. I believe that the record cannot stand the test of boundary by acquiescence under the authorities ably collected in an article pertinent to this problem, published in 3 Utah Law Review, 1953, and cases following which easily may be Shepardized and need no citation here, save by reference.

WILKINS, Justice, Dissenting:

I respectfully dissent. In 1932, when the defendants took possession of their tract of land, there existed a barbed wire fence running essentially parallel to and approximately 28 feet west of the boundary as described in the plaintiff's deed. (The description of plaintiff's tract overlapped that described in defendant's deed by more than 8 feet.) There was *no* evidence as to who built the fence, when it was built or the purpose for which it was built. This original fence remained intact until it was burned in 1954 except for several intervals prior thereto during which the wires were down. Defendant James Lea repaired the fence after each such interval, and he rebuilt the barbed wire fence after the fire in 1954, later replacing the barbed wire fence with a wooden fence, and finally erecting a chainlink fence in 1973. The majority opinion relies in part on the fact that plaintiff and his wife had access to both sides of the fence, but Mrs. Elias testified that it was necessary to remove the wooden slats to have access to the other side, and only small animals such as chickens could get through the fence without removal of the slats.

From 1932 until the time of trial, defendants occupied the property east of the fence and plaintiff and his predecessors occupied the property west of the fence. Plaintiff's predecessors in title did not claim the property east of the fence until 1954, when one of them, F. Grant Woodward, asserted ownership. Woodward threatened, but did not file suit to quiet title. No further claims were asserted for another 19 years, until the plaintiff instituted the present suit to quiet title,

and for all that time, the fence remained in the same position.

The doctrine of boundary by acquiescence was originally an extension of the boundary by agreement doctrine. The latter doctrine allows adjoining land owners to establish a boundary line by oral agreement where the true line is unknown, uncertain, or in dispute. Where there is no proof of an actual agreement, boundary by acquiescence applies, and ignorance, uncertainty or dispute as to the true line and an agreement as to the boundary will be presumed [1] if the following elements are established: (1) occupation up to a visible line marked by monuments, fences or buildings and (2) acquiescence in the line as the boundary (3) for a long period of years and (4) by adjoining landowners.[2]

It is the second element, acquiescence in the line as the boundary, which the District Court found was not established.

The term "acquiescence" was defined by this Court in *Lane v. Walker*, 29 Utah 2d 119, 505 P.2d 1199, 1200 (1973):

> .... the test to establish the boundary by "acquiescence" necessarily need not be based on mutual "intent." "Intent" is not synonymous with "acquiescence" in these cases. "Acquiescence" is more nearly synonymous with "indolence," or "consent by silence,"—or a knowledge that a fence or other monuments appears to be a boundary,—but that no one did anything about it for 48 years....

The test articulated above contains three elements: (1) knowledge (2) of an apparent boundary (3) and a failure to act in the face of such knowledge.

The first requirement in the *Lane* test for acquiescence is knowledge of the apparent boundary. The evidence shows that the fence was visible for the entire period of 1932 to 1954 at which time it burned. There is some conflict in the evidence as to the date it was replaced by defendants, but it is clear it was rebuilt by 1958, and that since 1954, the posts of the old fence remained. Defendants'

---

1. *Olsen v. Park Daughters Inv. Co.*, 29 Utah 2d 421, 511 P.2d 145 (1973).

2. *Fuoco v. Williams*, 15 Utah 2d 156, 389 P.2d 143 (1964). See also the second appeal of that case, 18 Utah 2d 282, 421 P.2d 944 (1966).

use of the property up to the fence line was also open to observation by the plaintiff's predecessors. It is clear, therefore, that plaintiff's predecessors knew of the fence and defendants' use of the property.

The second requirement in the *Lane* test is that there be an apparent boundary. Here, the use of the land by defendants up to the fence, coupled with the lack of use beyond the fence by plaintiff's predecessors, is an indication that the fence was a dividing line. Also, here, the fence unlike the irrigation ditch found not to be a boundary in *Fuoco v. Williams*, supra, note 2, was visible, permanent, and had a definite location and further had no purpose other than as a boundary.[3]

The final element in the acquiescence test is a failure to act. In 1954 Woodward asserted a claim against the property west of the fence line, but did nothing to clear title to the property. Thereafter, the disputed area was conveyed by plaintiff's predecessors only by quit claim deeds, though warranty deeds were used to convey the rest of plaintiff's property. As of 1954 the fence had been in existence for over 22 years and at that time the boundary was already established. There followed an additional 19 years during which all of the plaintiffs and their predecessors acquiesced in the fence as a boundary, and none of them took action to assert their claims. The fence has now been in the same place for 41 years, and this Court should confirm title to the disputed area in the defendants who have used it for all of that period of time.

MAUGHAN, Justice, concurs in the views expressed in the dissenting opinion of Mr. Justice WILKINS.

HALL, Justice, having disqualified himself does not participate herein; HENRIOD, Retired Justice, sat.

---

**3.** Even if the fence were built by the common grantor for purposes other than boundary, this would not prevent the fence from operating as a boundary once the property is conveyed to separate owners. *Baum v. Defa,* Utah, 525 P.2d 725 (1974).