2011 UT 71

**ESSENTIAL BOTANICAL FARMS, LC, Plaintiff and Appellee,**

**v.**

**Steven L. KAY, Defendant and Appellant.**

**No. 20090922.**

Supreme Court of Utah.

Nov. 15, 2011.

Robert L. Janicki, H. Burt Ringwood, Lance H. Locke, Salt Lake City, for plaintiff.

Sherman C. Young, Dallas B. Young, Provo, for defendant.

Justice NEHRING, opinion of the Court:

## INTRODUCTION

¶ 1 This appeal is rooted in a dispute over a parcel of land situated between adjoining landowners, Steven Kay and Essential Botanical Farms, LC (EBF). Mr. Kay is the record owner of the property, but EBF and its predecessors-in-interest have occupied the property for nearly fifty years. The district court quieted title to the property in favor of EBF on cross-motions for summary judgment after finding that the parties' predecessors-in-interest mutually acquiesced to a boundary marked by an old barbed wire fence.

¶ 2 Mr. Kay contends that the district court erred. First, he argues that the district court incorrectly concluded that the standard of proof in boundary by acquiescence cases is a preponderance of the evidence. Second, Mr. Kay contends that the district court erred when it found that the parties' predecessors had mutually acquiesced to the fence as the boundary because there was no direct evidence that his predecessors-in-interest intended to recognize the fence as the boundary.

¶ 3 We hold that the standard of proof in boundary by acquiescence cases is clear and convincing evidence. Additionally, we hold that acquiescence does not require any degree of subjective intent. Applying these standards, we conclude that Mr. Kay's predecessors acquiesced to the fence as the boundary. We therefore affirm the district court's entry of summary judgment quieting title in favor of EBF.

## BACKGROUND

¶ 4 Beginning in 1955, the Andrews family and the Fowkes family owned adjoining properties in Juab County, Utah. At that time, a barbed wire fence that had existed from time immemorial separated the two properties. For nearly forty years, the Andrews and Fowkes families respected the weathered fence as the boundary between the two properties: each family worked the land up to their respective fence lines, repaired the fence on occasion, and never occupied land on the other side of the fence.

¶ 5 The Andrews family sold their property to EBF in 1998. The Fowkes family sold their property to Mr. Kay in 2004. As of 2004, the barbed wire fence continued to separate the properties. Mr. Kay discovered, however, that the record boundary line extended past the fence and onto land occupied by EBF. Shortly thereafter, Mr. Kay removed portions of the old fence and constructed a new fence on the record boundary line which created a triangle-shaped parcel of land approximately six acres in size situated between the old fence line and the new fence. EBF sued Mr. Kay for trespass and to quiet title to the disputed six-acre parcel of land. EBF claimed that its predecessors-in-interest (i.e., the Andrews family) had obtained the parcel through boundary by acquiescence. Both parties filed cross-motions for summary judgment.

¶ 6 Boundary by acquiescence has four elements: "(i) occupation up to a visible line marked by monuments, fences, or buildings, (ii) *mutual acquiescence in the line as a boundary*, (iii) for a long period of time, (iv)

by adjoining land owners."[1] EBF presented the following evidence in support of its boundary by acquiescence claim.[2]

¶ 7 On EBF's side of the fence, three prior owners—Vernes Andrews, Oral Taylor,[3] and Delos Andrews—all testified that they always believed the old fence was the boundary line. They also testified that they each worked the land from 1955, 1955, and 1971 respectively, until it was sold to EBF in 1998.

¶ 8 Members of the Andrews family were not alone in believing that the old fence was the boundary. Vernes and Delos testified that they encountered the Fowkes family at least once per week and that there was never a dispute about the fence as the boundary line. For instance, Vernes testified that when his cows wandered onto the Fowkes' property as marked by the fence, they said, "Your cows are on my property," and not "You got to move your fence," or anything else that would indicate that the fence was not the boundary line. Likewise, Delos testified that the Fowkes family never acted in a manner inconsistent with the fence being the boundary line.

¶ 9 EBF was unable to produce direct evidence of the Fowkes family's understanding of the fence as the boundary because all but one of the Fowkes landowners were deceased, and the surviving landowner had not participated in farming activities on the property. However, EBF did present testimony from the grandsons of one of the Fowkes landowners, Tom Fowkes and Dale Fowkes, both of whom worked the land for decades. Both Tom and Dale testified that they always understood the old fence to be the boundary. In particular, Tom testified that the fence was in existence when he was born in 1947, that he farmed the property from when he "was big enough" until sometime in the 1970s, that his family maintained the fence on occasion, and that he dealt with the Andrews family "as long as they were [there]." Similarly, Dale testified that the fence was in existence when he was born in 1949 and that he farmed the property from childhood until it was sold to Mr. Kay in 2004, the last ten years of which he leased the land from two other Fowkes landowners. Dale also testified that he had "quite a bit" of contact with the Andrews family but was unaware of any disputes about the status of the fence as the boundary line.

¶ 10 Before deciding whether the evidence established a boundary by acquiescence for the purposes of summary judgment, the district court first addressed the burden of proof required to establish such a claim. Mr. Kay sought a clear and convincing evidence standard; EBF advocated a preponderance of the evidence standard. The district court concluded that the elements of boundary by acquiescence must be proven by a preponderance of the evidence. It reasoned that Utah courts have historically applied the preponderance standard in boundary by acquiescence cases, that boundary by acquiescence is distinguishable from other contexts where the clear and convincing standard is required, and that the preponderance standard adequately protects the property interests at stake because boundary by acquiescence is already a restrictive doctrine.

¶ 11 Next, the district court considered whether the evidence supported EBF's boundary by acquiescence claim for the purposes of summary judgment. The court concluded that even "under the clear and convincing standard," the Andrews and Fowkes families mutually acquiesced to the original fence as the boundary line between the properties. First, the district court reasoned that every witness who testified concerning the status of the fence said that "they believed the [o]riginal [f]ence marked the boundary between [the properties]." Although none of the witnesses specifically testified that the Fowkes landowners themselves believed the fence was the boundary, the district court inferred acquiescence from the testimony of

---

1. *RHN Corp. v. Veibell*, 2004 UT 60, ¶ 23, 96 P.3d 935 (emphasis added) (internal quotation marks omitted).

2. Because the only issue on appeal is whether Mr. Kay's predecessors-in-interest (i.e., the Fowkes landowners) acquiesced to the original

fence as the boundary between the two properties, we limit our recitation to those facts relevant to the "mutual acquiescence" element.

3. Oral Taylor is the brother-in-law of Vernes and Delos Andrews.

Tom and Dale Fowkes. The court reasoned that it was permitted to infer such acquiescence because all the Fowkes landowners were deceased (except for one landowner who did not farm the property) and because Tom and Dale "assisted their father and grandfather—the grandfather being a fee-title holder—with the farm operations." Second, the district court inferred mutual acquiescence from activities of the Andrews and Fowkes families. The court explained that for nearly fifty years the families farmed and grazed their respective properties up to the fence line, repaired the fence on occasion, and never disputed that the fence formed the boundary between the properties. The district court then granted EBF's motion for summary judgment and quieted title to the triangular six-acre parcel of land in favor of EBF. Mr. Kay now appeals. We have jurisdiction under Utah Code section 78A–3–102(3)(j).

## STANDARD OF REVIEW

¶ 12 "Burden of proof questions typically present issues of law that an appellate court reviews for correctness."[4] Similarly, "[w]e review a district court's decision to grant summary judgment for correctness, granting no deference to the district court's conclusions."[5] "Our review is limited to determining whether the district court correctly applied the summary judgment standard in light of the undisputed material facts."[6] "[W]hen reviewing a grant of summary judgment, we view the facts and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party."[7]

## ANALYSIS

¶ 13 Mr. Kay makes two arguments on appeal. First, he argues that the district court erred when it concluded that boundary by acquiescence claims may be proven by a preponderance of the evidence and not by clear and convincing evidence. Second, Mr.

Kay argues that regardless of which standard applies, the district court erred when it concluded that Mr. Kay's predecessors-in-interest (i.e., the Fowkes landowners) acquiesced to the barbed wire fence as the boundary line. He reasons that, while the evidence showed occupation up to the fence, it did not demonstrate that the Fowkes landowners subjectively intended to recognize the fence as the boundary.

¶ 14 We hold that boundary by acquiescence must be proven by clear and convincing evidence. We also hold that acquiescence is determined by the parties' objective actions in relation to the boundary and not their mental state. Applying these standards, we conclude that Mr. Kay's predecessors acquiesced to the old barbed wire fence as the boundary between the properties. We therefore affirm the district court's entry of summary judgment quieting title to the disputed property in favor of EBF.

## I. BOUNDARY BY ACQUIESCENCE CLAIMS MUST BE PROVEN BY CLEAR AND CONVINCING EVIDENCE

¶ 15 We first answer the question of what standard of proof is required in boundary by acquiescence cases. Mr. Kay urges us to adopt a clear and convincing evidence standard. He argues (1) that the Due Process Clauses of the Utah and United States Constitutions require us to adopt the clear and convincing standard "to reflect society's low tolerance for errors in real property boundaries," (2) that this court applies the clear and convincing standard to numerous analogous legal doctrines involving the deprivation of property rights, and (3) that public policy supports the clear and convincing evidence standard because Utah has developed a sophisticated system of identifying and recording real property boundaries.

---

4. *Martinez v. Media–Paymaster Plus/Church of Jesus Christ of Latter–Day Saints*, 2007 UT 42, ¶ 41, 164 P.3d 384.

5. *Gillmor v. Summit Cnty.*, 2010 UT 69, ¶ 16, 246 P.3d 102 (internal quotation marks omitted).

6. *Raab v. Utah Ry. Co.*, 2009 UT 61, ¶ 10, 221 P.3d 219.

7. *Ault v. Holden*, 2002 UT 33, ¶ 15, 44 P.3d 781 (internal quotation marks omitted).

¶ 16 In contrast, EBF advocates a preponderance of the evidence standard. It argues (1) that the Utah and United States Constitutions only mandate the clear and convincing evidence standard if a fundamental right or liberty interest is at stake, (2) that stare decisis mandates the preponderance standard because we have previously held that the elements of boundary by acquiescence must be proven by a preponderance of the evidence, (3) that the presumed standard of proof in civil cases is a preponderance of the evidence, (4) that other legal doctrines where we require the clear and convincing standard are distinguishable from the doctrine of boundary by acquiescence, and (5) that the better reasoned decisions from other jurisdictions apply the preponderance standard.

¶ 17 When the standard of proof necessary to establish a claim is not specified by statute, "[t]he degree of proof required in a particular type of proceeding has traditionally been left to the judiciary to resolve."[8] Without deciding the constitutional issues,[9] for the reasons discussed below we hold that a boundary by acquiescence claim must be proven by clear and convincing evidence.

*A. The Standard of Proof Required to Establish Boundary by Acquiescence Is a Question of First Impression*

¶ 18 Before we can consider Mr. Kay's arguments in favor of the clear and convincing evidence standard, we must first address EBF's contention that the doctrine of stare decisis requires us to apply a preponderance of the evidence standard. EBF asserts that we are bound by our statement in *Elias v.*

*Lea* that "the following elements [of boundary by acquiescence] are established *by a preponderance of the evidence:*

(1) Occupation up to a visible line marked definitely by some monument,

(2) Acquiescence in that line as a boundary

   (a) by adjoining land owners, and

   (b) for a long period of time."[10]

EBF also argues that in *Gillmor v. Cummings,* the court of appeals concluded there was "sufficient evidence to support the trial court's finding that [the appellant] failed to show *by a preponderance of evidence* that he had established a new boundary by acquiescence."[11] Likewise, EBF notes that in *Pitt v. Taron,* our court of appeals held that the appellant "failed to prove *by a preponderance of the evidence* that the landowners occupied the land up to a visible line for a complete period of 20 years."[12] Based on these cases, EBF contends that we must apply the preponderance of the evidence standard to claims of boundary by acquiescence. We disagree.

¶ 19 Contrary to EBF's assertion, the doctrine of stare decisis has no application here. We are, of course, not bound by *Gillmor* or *Pitt* because they are court of appeals decisions.[13] And while *Elias* was decided by this court, it is an unpublished opinion from 1978 that has not since been cited.[14] Although we have not squarely addressed whether unpublished opinions from this court constitute binding precedent, we have previously identified the "evils" of unpublished opinions and expressed our reluctance to rely upon such opinions.[15] Likewise,

8. *Egbert v. Nissan N. Am., Inc.,* 2007 UT 64, ¶ 11, 167 P.3d 1058 (alteration in original) (internal quotation marks omitted).

9. *See Citizens for Responsible Transp. v. Draper City,* 2008 UT 43, ¶ 15, 190 P.3d 1245 ("[T]his court should avoid addressing constitutional issues unless required to do so." (internal quotation marks omitted)).

10. 270 P.3d 414, 415 (Utah 1978) (emphasis added).

11. 904 P.2d 703, 707 (Utah Ct.App.1995) (emphasis added).

12. 2009 UT App 113, ¶ 2, 210 P.3d 962 (emphasis added) (internal quotation marks omitted).

13. *See State v. Rhinehart,* 2007 UT 61, ¶ 19, 167 P.3d 1046 ("We are, of course, not bound by decisions issued by our court of appeals.").

14. *See Elias,* 270 P.3d 414.

15. *See State v. Gardiner,* 814 P.2d 568, 570 n. 1 (Utah 1991) ("The evils of unpublished opinions have been commented upon by many. Given the paucity of precedent in Utah, there seems little justification for their use."); *see also Paffel v. Paffel,* 732 P.2d 96, 104 (Utah 1986) (Zimmerman, J., concurring) (stating that "[i]t is time we stopped the practice of using unpublished opinions").

Utah Rule of Appellate Procedure 30(f) indicates that while unpublished decisions from this court may be cited for their persuasive value, they may not be cited as precedent.[16] Accordingly, we hold today that while unpublished opinions from this court may be cited for their persuasive value, they are not binding on this court. We are not, therefore, shackled by our decision in *Elias*, and the burden of proof in boundary by acquiescence cases is an issue of first impression.[17]

### B. Boundary by Acquiescence Must Be Proven by Clear and Convincing Evidence

██ ¶ 20 Having concluded that we are not bound by stare decisis, we now address whether the district court erred when it concluded that the elements of boundary by acquiescence must be proven by a preponderance of the evidence. As stated above, Mr. Kay argues that we should adopt the clear and convincing evidence standard "to reflect society's low tolerance for errors in real property boundaries" and because we require the clear and convincing standard in numerous analogous legal doctrines involving the deprivation of property rights. We agree.

██ ¶ 21 Generally speaking, a burden of proof is an expression of society's tolerance for error in a particular realm of the law.[18] Thus, we have held that "proof beyond a reasonable doubt is the standard appropriate for criminal defendants who stand to lose liberty or life upon conviction, while a preponderance of the evidence is the level of proof required in the typical civil case where only money damages are at stake." [19] "The intermediate standard of proof—clear and convincing evidence—is appropriate when the interests at stake in a civil case are particularly important and more substantial than the mere loss of money." [20] For instance, the clear and convincing evidence standard has been utilized in cases involving civil commitment, deportation, denaturalization, or where parental liberty interests are at stake.[21]

¶ 22 Here, we are presented with a legal doctrine—boundary by acquiescence—that may deprive a person of fee simple ownership in real property. Although an interest in real property is clearly not as important as a liberty interest, it certainly has more importance than money. Indeed, we have implicitly recognized this notion by frequently requiring the intermediate clear and convincing evidence standard in other types of disputes involving real property. A superficial

**16.** *See* Utah R.App. P. 30(f) ("Published decisions of the Supreme Court and the Court of Appeals, and unpublished decisions of the Court of Appeals issued on or after October 1, 1998, may be cited as precedent in all courts of the State. Other unpublished decisions may also be cited, so long as all parties and the court are supplied with accurate copies at the time all such decisions are first cited.").

**17.** We also note that a decision must generally meet three requirements to trigger stare decisis: it must be (1) "[a] deliberate or solemn decision of a court or judge [2] made after argument of a question of law fairly arising in a case, and [3] necessary to its determination, is an authority, or binding precedent, in the same court or in other courts of equal or lower rank, in subsequent cases, where the very point is again in controversy." *Stranahan v. Fred Meyer, Inc.*, 331 Or. 38, 11 P.3d 228, 237 (2000) (internal quotation marks omitted). Here, even if *Elias* were a published opinion, the applicable burden of proof was not solemnly or deliberately addressed in the opinion and was not necessary to its determination because we concluded there was *no evidence* from which boundary by acquiescence could have been found. *See Elias*, 270 P.3d at 414–15

("There is *nothing* in the record to show that any agreement ever existed between the owners of the two tracts of land to the effect that the fence was the true boundary between the parcels. Nor was there *any evidence* to indicate that the fence was intended to be a dividing line." (emphases added)).

**18.** *See Egbert*, 2007 UT 64, ¶ 12, 167 P.3d 1058 ("The function of a standard of proof, as that concept is embodied in the Due Process Clause and in the realm of factfinding, is to instruct the factfinder concerning the degree of confidence our society thinks he should have in the correctness of factual conclusions for a particular type of adjudication. The standard serves to allocate the risk of error between the litigants and to indicate the relative importance attached to the ultimate decision." (internal quotation marks omitted)).

**19.** *Id.*

**20.** *Id.* ¶ 13 (internal quotation marks omitted).

**21.** *Id.*

review of our case law reveals that we require the clear and convincing evidence standard in the following situations: (1) abandonment of easements,[22] (2) establishment of prescriptive easements,[23] (3) abandonment of restrictive covenants,[24] (4) an attack on the validity of a deed,[25] (5) adverse possession based on parol gifts,[26] (6) overcoming presumptions that deeds convey fee simple title in favor of a finding that the deed was only intended as security,[27] (7) a challenge to the validity of a joint tenancy arguing that there was no intent to create a right of survivorship,[28] and (8) dedication of highways to public use by abandonment.[29] As these cases illustrate, we generally require clear and convincing evidence to deprive an individual of an interest in real property. Because boundary by acquiescence also alters fee simple ownership of real property, we hold that a claim of boundary by acquiescence must be proven by clear and convincing evidence. This standard is compatible with our other real property cases and will also promote consistency and predictability among these related real property doctrines.[30] Having resolved the applicable standard of proof, we next consider whether Mr. Kay's predecessors acquiesced in the original fence as the boundary.

## II. THERE IS CLEAR AND CONVINCING EVIDENCE THAT MR. KAY'S PREDECESSORS ACQUIESCED IN THE OLD FENCE AS THE BOUNDARY LINE

¶ 23 Because this case involves an appeal from a grant of summary judgment, we are required to view the evidence in the light most favorable to the nonmoving party, Mr. Kay.[31] Even when viewed in this light, we conclude there is clear and convincing

22. *W. Gateway Storage Co. v. Treseder*, 567 P.2d 181, 182 (Utah 1977) ("[T]he degree of proof required [to abandon an easement is] that of clear and convincing actions releasing the ownership and right of use and an intentional abandonment, not a mere preponderance of the evidence.").

23. *See Marchant v. Park City*, 771 P.2d 677, 682 (Utah Ct.App.1989) ("A claimant of prescriptive easement must establish the necessary elements by clear and convincing evidence." (footnotes omitted)).

24. *Swenson v. Erickson*, 2000 UT 16, ¶ 22, 998 P.2d 807 ("Evidence of abandonment [of a covenant] must be established by clear and convincing evidence.").

25. *Controlled Receivables, Inc. v. Harman*, 17 Utah 2d 420, 413 P.2d 807, 809 (1966) ("[O]ne who asserts the invalidity of a deed must so prove by clear and convincing evidence. The recording of a deed raises a presumption of delivery, which presumption is entitled to great and controlling weight and which can only be overcome by clear and convincing evidence.").

26. *Raleigh v. Wells*, 29 Utah 217, 81 P. 908, 910 (1905) ("Where adverse possession is founded upon a parol gift, the gift must be established by clear and convincing evidence.").

27. *Glauser Storage, L.L.C. v. Smedley*, 2001 UT App 141, ¶ 19, 27 P.3d 565 ("The party seeking to show that [a] deed was intended as security must show by clear and convincing evidence that the conveyance was actually intended as a mortgage." (internal quotation marks omitted)).

28. *Ashton v. Ashton (In re Estate of Ashton)*, 898 P.2d 824, 826 (Utah Ct.App.1995) ("When title to property is held in joint tenancy with right of survivorship, a rebuttable presumption arises that the title holders intended to create a valid joint tenancy. A party challenging the validity of a joint tenancy bears the burden of proving by clear and convincing evidence that at the time title was taken by the joint tenants there was no intention to create a valid joint tenancy with right of survivorship." (citations omitted)).

29. *Wasatch Cnty. v. Okelberry*, 2008 UT 10, ¶ 9, 179 P.3d 768 ("In light of the constitutional protection accorded private property, we have held that a party seeking to establish dedication and abandonment ... bears the burden of doing so by clear and convincing evidence.").

30. *See id.* ¶ 11 (explaining that "the court of appeals thoughtfully sought to bring some coherency and consistency to this area of the law"); *see also Eggett v. Wasatch Energy Corp.*, 2004 UT 28, ¶ 42, 94 P.3d 193 (Nehring, J., concurring) (identifying our "well-founded desire to bring consistency and predictability to the law"); *Peterson v. Utah Bd. of Pardons*, 931 P.2d 147, 151 (Utah Ct.App.1997) (explaining that "although due process demands flexibility, it also demands consistency to preserve fairness and procedural regularity" (citations omitted)).

31. *See Ault v. Holden*, 2002 UT 33, ¶ 15, 44 P.3d 781 ("[W]hen reviewing a grant of summary judgment, we view the facts and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party." (internal quotation marks omitted)).

evidence that Mr. Kay's predecessors-in-interest acquiesced in the old fence as the boundary between the properties.

¶ 24 The definition of clear and convincing evidence presents quantitative difficulties.[32] "[I]t implies something more than the usual requirement of a preponderance, or greater weight, of the evidence; and something less than proof beyond a reasonable doubt."[33] Courts that assess these comparative degrees of certainty have characterized the clear and convincing standard as the existence of facts that make a conclusion "very highly probable."[34] Yet "[t]he words 'clear and convincing' have a meaning which is commonly known and understood. Attempting refinement beyond that ... results only in finding synonyms for those words and provides nothing more definite or helpful as to the quantum of proof."[35] Thus, we trust that our courts are able to apply this comparative standard based on the commonly understood meanings of the words "clear" and "convincing." In this case, the district court correctly determined that the undisputed facts provided clear and convincing evidence of a boundary by acquiescence.

¶ 25 Boundary by acquiescence has four elements: "(i) occupation up to a visible line marked by monuments, fences, or buildings, (ii) *mutual acquiescence in the line as a boundary,* (iii) for a long period of time, (iv) by adjoining land owners."[36] Mr. Kay's challenge concerns only the "mutual acquiescence" element. Specifically, Mr. Kay argues that the district court erred when it concluded that there had been mutual acquiescence in the fence as the boundary. According to Mr. Kay, the evidence showed mere occupation up to the fence by the landowners, but EBF presented no evidence, either direct or circumstantial, to show that Mr. Kay's predecessors-in-interest (i.e., the Fowkes landowners) intended to acquiesce in the fence as the boundary. Mr. Kay reasons that this subjective intent is a necessary subelement of mutual acquiescence. We disagree.

¶ 26 "Under the doctrine of boundary by acquiescence, the party attempting to establish a particular line as the boundary between properties must establish that the parties mutually acquiesced in the line as separating the properties."[37] "To acquiesce means to recognize and treat an observable line, such as a fence, as the boundary dividing the owner's property from the adjacent landowner's property."[38] This

**32.** *Child v. Child,* 8 Utah 2d 261, 332 P.2d 981, 986 (1958).

**33.** *Id.*

**34.** *Lovett v. Cont'l Bank & Trust Co.,* 4 Utah 2d 76, 286 P.2d 1065, 1067 (1955).

**35.** *Child,* 332 P.2d at 986.

**36.** *RHN Corp. v. Veibell,* 2004 UT 60, ¶ 23, 96 P.3d 935 (emphasis added) (internal quotation marks omitted).

**37.** *Id.* ¶ 24 (internal quotation marks omitted).

**38.** *Id.* (internal quotation marks omitted). We pause to note that the label "mutual acquiescence" in our case law may create some confusion. The word acquiescence is defined as "tacit or passive acceptance." BLACK'S LAW DICTIONARY 26 (9th ed.2009). It implies a relationship in which one person takes affirmative actions, and the acquiescing party consents to such action by failing to object. Where a landowner has acted deliberately to mark a boundary, it stretches reason to say that the landowner can also passively "acquiesce" in that boundary. This is because the unilateral quality of "acquiescence" conflicts with the idea of "mutuality," which requires reciprocity, an exchange, or an interchange. *See id.* 1117. Despite these semantic inconsistencies, boundary by acquiescence is a common law doctrine. As such, we are not bound by the same linguistic limitations that we encounter when interpreting legislative language. *See Sabbath v. United States,* 391 U.S. 585, 589, 88 S.Ct. 1755, 20 L.Ed.2d 828 (1968) (noting that "linguistic analysis seldom is adequate [to carry out the] fundamental values and the ongoing development of the common law"). Consequently, though we have called this element "mutual acquiescence" throughout our case law, in substance, this element requires a showing that each of the adjacent landowners has *recognized and treated* a visible line as the boundary between the properties. *See Veibell,* 2004 UT 60, ¶ 24, 96 P.3d 935 ("To acquiesce means to *recognize and treat* an observable line, such as a fence, as the boundary dividing the owner's property from the adjacent landowner's property." (emphasis added) (internal quotation marks omitted)); *Ault,* 2002 UT 33, ¶ 19, 44 P.3d 781 (same); *Staker v. Ainsworth,* 785 P.2d 417, 420 (Utah 1990) (finding mutual acquiescence where the parties "*regarded* the fences as the true boundary lines" (emphasis added)); *Fuoco v. Williams,* 18 Utah

"acquiescence, or recognition, may be tacit and inferred from evidence, [that is], the landowner's actions with respect to a particular line may evidence [that] the landowner impliedly consents, or acquiesces, in that line as the demarcation between the properties."[39] Thus, "[a]cquiescence is a highly fact-dependent question."[40]

¶ 27 Contrary to Mr. Kay's assertion, a party's subjective intent has no bearing on the existence of mutual acquiescence. Instead, acquiescence in, or recognition of, a boundary is an objective determination based solely on the parties' actions in relation to each other and to the line serving as the boundary. Mutual acquiescence arises "where neighbors do not behave[ ] in a fashion inconsistent with the belief that a given line is the boundary between their properties."[41] A party's "acquiescence in a visible line as a boundary" may "be shown by silence,"[42] or through "[f]ailure by the record title owner to suggest or imply that the dividing line between the properties is not in the proper location."[43] On the other hand, "[n]onacquiescence in a boundary would be signaled where ... a landowner notifies the adjoining landowner of her disagreement over the boundary, or [otherwise] takes action inconsistent with recognition of a given line as the boundary."[44] In either instance, recognition is displayed through specific actions, the existence of which is not determined by the actor's mental state. As a result, the determination of mutual acquiescence is based on the objective behavior of the adjacent landowners regardless of their subjective intent to act in such a manner.

¶ 28 In *RHN Corp. v. Veibell*, we said that "the absence of direct evidence of a prior owner's subjective *belief* concerning the boundary is not fatal to an assertion of mutual acquiescence."[45] Mr. Kay has taken that language to mean that there must be some evidence, even if circumstantial, supporting a subjective *intent* to acquiesce or recognize the fence as the boundary. We disagree with Mr. Kay's interpretation of *Veibell*. First, we note that a subjective belief is merely an individual's personal understanding of a certain state of affairs and not a degree of intent. In *Veibell*, we addressed the relevance of a landowner's subjective belief or understanding that a visible line represents the boundary between two properties. We determined that while a subjective belief may have some relevance to mutual acquiescence, it is probative only insofar as the belief is supported or created by the objective actions of the parties.[46] Here we reiterate that a subjective belief regarding the location of a boundary may be evidence of mutual acquiescence, but only to the extent that such understanding is based on the objective actions of the landowners. However, neither a subjective belief nor any level of intent has ever been a requirement of mutual acquiescence.[47]

¶ 29 In this case, the undisputed facts are clear and convincing evidence that the landowners mutually acquiesced by recognizing and treating the fence as the boundary between their properties. First, all five witnesses were consistent in their testimony that they always believed the fence was the

2d 282, 421 P.2d 944, 947 (1966) ("In order to establish a boundary by acquiescence ... *recognition* and acquiescence must be mutual, and both parties must have knowledge of the existence of [the] line as [the] boundary." (emphasis added)).

39. *Veibell*, 2004 UT 60, ¶ 24, 96 P.3d 935 (internal quotation marks omitted).

40. *Id.* (internal quotation marks omitted).

41. *Bahr v. Imus*, 2011 UT 19, ¶ 37, 250 P.3d 56 (alteration in original) (emphasis added) (internal quotation marks omitted).

42. *Veibell*, 2004 UT 60, ¶ 25, 96 P.3d 935.

43. *Bahr*, 2011 UT 19, ¶ 37, 250 P.3d 56 (internal quotation marks omitted).

44. *Id.* (emphasis added).

45. 2004 UT 60, ¶ 26, 96 P.3d 935 (emphasis added).

46. *See id.*

47. *Id.* ("[B]ecause acquiescence may be inferred from the land-owner's actions, the absence of direct evidence of a prior owner's subjective belief concerning the boundary is not fatal to an assertion of mutual acquiescence. This especially holds true where that owner is deceased and unable to testify." (citation omitted)).

boundary between the properties. The inference to be drawn from this testimony is that the Fowkes landowners also recognized the fence as the boundary line. We are able to draw this inference for two reasons: (1) all five witnesses worked on the properties for several decades and had good relationships with the Fowkes landowners during those years; and (2) except for one landowner who did not engage in farming activities on the property, the Fowkes landowners are all deceased and unable to testify. For instance, Tom and Dale Fowkes both testified that they assisted their father and grandfather—their grandfather being the first landowner—with farming operations and continued to farm the land for a number of years as adults. Dale also testified that he farmed the land for about ten years under a lease from two other Fowkes landowners. Because Tom and Dale, who were both related to the Fowkes landowners and worked the land for several decades, "understood" that the fence was the boundary between the properties, the reasonable inference is that the Fowkes landowners also recognized the fence as the boundary. We drew a similar inference in *Veibell* based on testimony from the brother of a deceased landowner.[48] Additionally, Vernes Andrews, Delos Andrews, and Oral Taylor—all owners of the Andrews property who were involved in business operations for several decades—testified that they had a good relationship with the Fowkes landowners and that they always believed the fence served as the boundary line. While this testimony does not by itself prove acquiescence, the fact that it is consistent with Tom's and Dale's testimony supports our conclusion that the Fowkes landowners also recognized the old fence as the boundary between the properties.

¶ 30 Second, there is no evidence that the Fowkes landowners themselves ever "behaved in a fashion inconsistent with the belief that the fence line was the boundary."[49] Rather, the actions of both families plainly support an inference that the Fowkes landowners acquiesced to the fence as the boundary line. For example, the fact that both families farmed their respective properties and allowed their cattle to graze "up to, but never over" the fence for nearly half a century strongly suggests that the Fowkes landowners recognized and treated the fence as the boundary between the properties.[50] Such recognition is also evidenced by the fact that the families both repaired the fence on occasion.

¶ 31 Finally, the Fowkes landowners' acquiescence can be inferred from the fact that there is no evidence that the Fowkes landowners ever disputed that the fence was the boundary.[51] All five witnesses testified that they never witnessed a single discussion about the fence, much less a dispute as to whether the fence was the boundary. For example, Vernes Andrews testified that when his cows wandered onto the Fowkes' property, they simply said, "Your cows are on my property," not "You got to move your fence" or anything similar. Accordingly, we conclude that the only *reasonable* inference to be drawn from all of the evidence is that the Fowkes landowners recognized, or in other words that they acquiesced in, the old fence "as the demarcation between the properties."[52]

¶ 32 Mr. Kay contends, however, that this evidence merely shows that the Fowkes landowners occupied the land up to the fence and not that they recognized the fence as the boundary. He argues that none of the witnesses testified regarding what the Fowkes landowners actually believed about the fence.

**48.** *See id.* ¶ 27 ("[The landowner's] brother, ... who worked on the farm during the 1960s, testified that he always believed that the fence was the true boundary.").

**49.** *Staker,* 785 P.2d at 420.

**50.** *See Veibell,* 2004 UT 60, ¶ 25; 96 P.3d 935("Occupation up to, but never over, the line is evidence of acquiescence.").

**51.** *See Ault,* 2002 UT 33, ¶ 21, 44 P.3d 781 ("[M]ere conversations between the parties evidencing either an ongoing dispute as to the property line or an unwillingness by one of the adjoining landowners to accept the line as the boundary refute any allegation that the parties have mutually acquiesced in the line as the property demarcation.").

**52.** *Id.* ¶ 19.

Mr. Kay also argues that the testimony of Tom and Dale Fowkes has no bearing on whether the Fowkes landowners recognized the fence as the boundary because Tom and Dale only testified to their "experience with the property." That is, they testified about their observations of occupation up to the line, and they were not authorized to take any action or inaction on behalf of the Fowkes landowners that would indicate that the fence was the boundary. Consequently, Mr. Kay argues that there are a number of alternative inferences from the fact that the Fowkes landowners occupied only up to the fence, including "convenience, inconvenience, lack of resources to move the fence or . . . a cost-benefit analysis indicating that relocating the fence was not worth the time and effort." Mr. Kay concludes that we are required to draw these possible inferences in his favor for the purpose of summary judgment. We are not convinced.

¶ 33 In essence, Mr. Kay argues that we are not permitted to find acquiescence because there is no direct evidence of the Fowkes landowners' subjective belief regarding the boundary. But as explained above, a landowner's subjective belief or understanding of a boundary has limited probative value as evidence of mutual acquiescence, and it should be treated accordingly. Contrary to what Mr. Kay's argument implies, summary judgment does not require absolute certainty of the predecessors' acquiescence to the fence as the boundary; it merely requires us to "view the facts and all *reasonable* inferences drawn therefrom in the light most favorable to the nonmoving party." [53] Here, all but one of the Fowkes landowners is deceased. Yet as we explained above, the *reasonable* inference to be drawn from the available evidence—even when viewed under the clear and convincing standard and in a light most favorable to Mr. Kay—is that the Fowkes landowners acquiesced to the old barbed wire fence as the boundary between the properties because they recognized and treated it as such. We therefore affirm the decision of the district court.

53. *DCM Inv. Corp. v. Pinecrest Inv. Co.*, 2001 UT 91, ¶ 6, 34 P.3d 785 (emphasis added) (internal

## CONCLUSION

¶ 34 We hold that claims of boundary by acquiescence must be proven by clear and convincing evidence. Applying this standard, we conclude that the undisputed facts are clear and convincing evidence that Mr. Kay's predecessors-in-interest acquiesced to the original barbed wire fence as the boundary between the properties. We therefore affirm the district court's grant of summary judgment quieting title to the disputed property in favor of EBF.

¶ 35 Chief Justice DURHAM, Associate Chief Justice DURRANT, Justice PARRISH, and Justice LEE concur in Justice NEHRING'S opinion.