2022 UT App 78

# THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
ANTHONY DAVID SILVEIRA,
Appellant.

Opinion
No. 20210421-CA
Filed June 24, 2022

Third District Court, Salt Lake Department
The Honorable Royal I. Hansen
No. 211905365

Janet Lawrence and Ian L. Quiel,
Attorneys for Appellant

Sean D. Reyes and William M. Hains,
Attorneys for Appellee

JUDGE GREGORY K. ORME authored this Opinion, in which
JUDGES DAVID N. MORTENSEN and JILL M. POHLMAN concurred.

ORME, Judge:

¶1      Anthony David Silveira appeals the district court's denial of his motion for pretrial release, in connection with sexual abuse he allegedly perpetrated on Ruby,[1] his then-twelve-year-old half-sister. Silveira argues that the court erred in determining both that substantial evidence existed to support the charged conduct and that there was clear and convincing evidence that he was a substantial danger to an individual or the community at large. We disagree and affirm.

---

1. A pseudonym.

BACKGROUND

¶2      In 2021, the State filed a sworn information in the district court alleging that Silveira committed four counts of rape of a child, three counts of aggravated sexual abuse of a child, and one count of sodomy upon a child—all first-degree felonies. The information asserted that probable cause existed based on the following:

> The statement of 14-year-old Ruby that between June 20, 2019, and June 21, 2019, . . . she spent the night at her adult half-brother, Anthony David Silveira's apartment. Silveira had been drinking. Silveira made a bed on the floor for Ruby near the couch where he slept. Ruby stated that Silveira asked her if she wanted to cuddle, and she told him no. Ruby stated that she fell asleep and was woken up early in the morning to Silveira touching her inappropriately. Ruby stated that Silveira had moved her underwear over and was rubbing her vagina with his hand. Silveira then removed Ruby's underwear and pushed her dress up over her chest. Silveira unbuckled Ruby's bra and was holding Ruby's arms above her head by the wrists with his left hand. Ruby stated that Silveira was "kissing all over my chest and neck" then "he started going down to like my stomach. And then he went to my thighs and then he started, like, putting his mouth on my vagina." Ruby stated that Silveira put two of his fingers into her vagina and moved his fingers in a back-and-forth movement. Silveira then start[ed] using his mouth and rubbed his tongue on Ruby's vagina and would spit. Silveira then tried putting his penis into Ruby's vagina 4 times. Ruby stated that Silveira then just stopped. Silveira said he was sorry and asked Ruby not to tell anyone about this.

¶3    The sworn information was signed by "B. Shupe" of the Salt Lake City Police Department, and the information stated that the "evidence [was] obtained from . . . B. Shupe," Ruby, and two other individuals referred to by their initials. As part of the information, the State requested that Silveira be held without bail. It asserted that there was "substantial evidence supporting the charge and clear and convincing evidence that [Silveira] would constitute a substantial danger to any other individual or to the community." The court then issued a no-bail warrant.

¶4    After Silveira was apprehended and arrested, he filed a motion for release on bail or to pretrial services. To support his motion, Silveira submitted an exhibit showing that he was incarcerated in the county jail from June 2, 2019, to June 30, 2019, which, he argued, rendered it impossible for him to have perpetrated the charged offenses. At a subsequent hearing on the matter, Silveira argued that because he had "undisputed proof" that he was incarcerated during this time, he "couldn't have done what the State alleges he did." Thus, Silveira argued, the State failed to present substantial evidence of the charged crimes, warranting a no-bail hold. He also argued that he did not pose a substantial danger to the community because he had no prior sexual abuse convictions, "was a model probationer" on a prior conviction, and received a "glowing" recommendation from his probation officer recommending termination of his probation on a previous conviction. *See* Utah Code Ann. § 77-20-1(2)(c) (LexisNexis Supp. 2021) (allowing a defendant to be held without bail if a felony is alleged, "there is substantial evidence to support the charge[,] and the court finds by clear and convincing evidence that the individual would constitute a substantial danger to any other individual or to the community").[2] He also claimed that he

---

2. The applicable portion of the Utah Code has since been amended. Therefore, we cite the code in effect at the relevant time.

was employed, would be living with a "close sister," and "has sort of a quasi stepchild, a girlfriend's kid."

¶5     The prosecutor responded that the date of the offenses was "not an element that the State has to prove in a child sexual abuse case" and that due to the young age of the alleged victim, her inability to accurately provide a specific date of the crime that occurred two years earlier "is not going to be fatal to the State's case." The prosecutor argued that Ruby's "statement has provided the necessary proof," i.e., "substantial evidence that . . . a sexual abuse crime occurred against a child, [and] that [Silveira] did it," which was sufficient "to keep [Silveira] in custody." Regarding Silveira being a danger to the community, the prosecutor responded that it was "not unusual for sex offenders to have little to no criminal history" and that he had "grave concerns that [Silveira] would be going home with . . . a stepchild."

¶6     The court denied Silveira's motion. It ruled that his incarceration during the dates listed in the information was not fatal to the State's case because "it does not constitute an element of the crime." The court further stated that it "has concerns with regard to [Silveira] posing a substantial danger to the community," and it determined not to "grant[] a release or bail at this juncture." Silveira appeals this ruling.[3]

## ISSUE AND STANDARD OF REVIEW

¶7     Silveira asserts that the district court erred in denying his motion for pretrial release or bail. The parties disagree on the appropriate standard of review. The State argues that we should

---

3. Under Utah Code section 77-20-1(9), an appeal could "be taken from an order of a court denying bail to the Utah Court of Appeals[.]"

review this issue for abuse of discretion, while Silveira contends that we should review it for correctness. We need not resolve this dispute here because, even under the correctness standard of review urged by Silveira, we ascertain no error by the district court.[4]

## ANALYSIS

¶8    Under Utah Code section 77-20-1, a defendant charged with a felony could be held without bail if (1) "there is substantial evidence to support the charge" and (2) "the court finds by clear and convincing evidence that," as relevant here, "the individual would constitute a substantial danger to any other individual or to the community." Utah Code Ann. § 77-20-1(2)(c) (LexisNexis Supp. 2021). We address each issue in turn.

### I. Substantial Evidence

¶9    Silveira contends that the district court erred in ruling that the State presented substantial evidence to support the charged conduct because (1) the State "failed to provide any reliable evidence that [he] committed the alleged crimes" and (2) contrary to the court's holding, "[t]he dates of the alleged criminal activity provided in the Information are not inconsequential."[5] We

---

4. The appropriate standard of review applicable in this context is currently under consideration by the Utah Supreme Court in *State v. Randolph*, No. 20200881-SC (Utah argued Feb. 7, 2022).

5. Silveira also contends that before the district court, "the state's arguments impermissibly attempted to shift the burden of proof at the detention hearing from the state to the defendant." We decline to address this argument, however, because Silveira does not assert that the *district court* shifted the burden of proof to him. Thus, we have nothing to consider because based on "the nature

(continued…)

conclude that Silveira's first argument was not preserved and therefore decline to address it on its merits, leaving us to contend only with the merits of his second argument.

A.     Reliable Evidence

¶10    Silveira argues that substantial evidence did not exist because the State "offered no evidence" of his guilt "beyond B. Shupe's declaration in the Information," which "is not sufficient to constitute substantial evidence where no reliability criteria have been satisfied." But before the district court, Silveira argued only that the State could not show substantial evidence because he was incarcerated when the State alleged the crimes were committed and thus he "couldn't have done what the State alleges he did." This was the extent of Silveira's argument regarding substantial evidence.

¶11    At oral argument before this court, Silveira argued that because his challenge to the dates of the crime preserved the issue of substantial evidence more generally, he is permitted to raise other unique arguments for the first time on appeal so long as they relate to the broader issue of substantial evidence. Silveira's attempt to characterize his new arguments on appeal as simply falling under the large umbrella of the substantial evidence issue, for purposes of preservation, is unavailing.

¶12    Our Supreme Court has directed us, when analyzing preservation, to "view *issues* narrowly, but also made it clear that new *arguments*, when brought under a properly preserved issue or theory, do not require an exception to preservation." *State v. Johnson*, 2017 UT 76, ¶ 14 n.2, 416 P.3d 443 (emphasis in original). The Court clarified that "[s]uch arguments include citing new authority or cases supporting an issue that was properly

of our appellate jurisdiction," we "review the decisions of lower courts" and not "the actions of counsel—at least not directly." *State v. Hummel*, 2017 UT 19, ¶ 107, 393 P.3d 314.

preserved." *Id.* But "an argument based upon an 'entirely distinct legal theory' is a 'new claim or issue' and must be separately preserved." *True v. Utah Dep't of Transp.*, 2018 UT App 86, ¶ 32, 427 P.3d 338 (quoting *Johnson*, 2017 UT 76, ¶ 14 n.2).

¶13 The reliability-of-the-evidence issue that Silveira raises for the first time on appeal is an entirely distinct legal theory from the timing-of-the-crime issue he raised below. While both issues may fall under the broad category of sufficient evidence, they entail completely different analyses and are distinct legal theories regarding whether the State presented substantial evidence. One issue concerns whether the evidence provided was sufficiently *reliable* to be believed, while the other issue is an inquiry into whether Silveira's alibi made it *impossible* for him to have committed the alleged crimes. The former "is not merely a new argument to support the issue raised below, but an entirely distinct legal theory" needing to be separately preserved. *See id.* (quotation simplified).

¶14 This point is further driven home by considering the purpose for our preservation rule, which is to "give[] the trial court an opportunity to address the claimed error, and if appropriate, correct it," and this "avoids unnecessary appeals and retrials." *Patterson v. Patterson*, 2011 UT 68, ¶ 15, 266 P.3d 828 (quotation simplified). Here, the district court was not on notice that, separate and apart from Silveira's alibi defense, it was being asked to rule on whether the evidence the State provided from B. Shupe and the other listed individuals was sufficiently reliable to meet the substantial evidence standard. The court, therefore, had no opportunity to consider the reliability of the evidence in the information because this issue was never brought to its attention. Thus, this issue was not preserved below, and we decline to address it. *See id.* ¶ 12 ("An issue is preserved for appeal when it has been presented to the district court in such a way that the court has an opportunity to rule on it.") (quotation simplified).

B.      Dates of the Alleged Crimes

¶15     Silveira contends that the district court erred in finding that substantial evidence existed even though he provided "undisputed proof" that he was incarcerated during the dates on which the State alleged in the information that he committed the crimes. Specifically, Silveira argues that his "proof that he could not have committed the offenses on the dates alleged is not minor or unimportant" and "weighs heavily in [his] favor and defeats any conclusion that a reasonable mind could find the state offered substantial evidence against [him]." We disagree.

¶16     The specific date an offense occurred "is generally not an element which the prosecution must prove at trial," *State v. Fulton*, 742 P.2d 1208, 1213 (Utah 1987), and it is not an element of any of the charges here, *see* Utah Code Ann. §§ 76-5-402.1 (LexisNexis 2017), -403.1, -404.1 (Supp. 2021). Accordingly, a "mere assertion of an alibi defense does not impose on the prosecution the additional burden of proving the precise date of the act." *Fulton*, 742 P.2d at 1213. Additionally, our case law is replete with the admonition that, owing to the difficulty many children have in remembering details of sexual abuse with specificity, the specific date is not required for notice to a defendant or for obtaining a conviction at trial in child sexual abuse cases. *See, e.g.*, *State v. Taylor*, 2005 UT 40, ¶ 12, 116 P.3d 360 ("We have also acknowledged that in child sexual abuse prosecutions, identifying the specific date, time, or place of the offense is often difficult owing to the inability of young victims to provide this information. Responding to the realities of cognitive development, we have been less demanding of exact times and dates when young children are involved."); *State v. Wilcox*, 808 P.2d 1028, 1033 (Utah 1991) ("If we were to hold that . . . no offense could be charged because the alleged victim is too young to testify with certainty concerning the time, dates, or places where the abuse occurred, we would leave the youngest and most vulnerable children with no legal protection. An abuser could

escape prosecution merely by claiming that the child's inability to remember the exact dates and places of the abuse impaired the abuser's ability to prepare an alibi defense."); *State v. Robbins*, 709 P.2d 771, 773 (Utah 1985) ("We recognize that children are often not able to identify with a high degree of reliability, and sometimes not at all, when an event in the past took place."); *In re J.E.G.*, 2020 UT App 94, ¶ 23, 468 P.3d 1048 ("Victim's inability to remember the specific date is not fatal to the State's case."). Given this case law, an alibi defense does not *necessarily* defeat a conclusion that substantial evidence exists to hold a felony defendant without bail.[6]

---

6. The parties offer divergent standards that a district court must follow in making a substantial evidence determination in the bail context. Silveira argues, quoting *JLPR LLC v. Procurement Policy Board*, 2021 UT App 52, 492 P.3d 784, an administrative law case, that the district court must "consider[] all the evidence in the record, both favorable and contrary," and determine whether "a reasonable mind could reach the same conclusion." *See id.* ¶ 15 (quotation simplified). The State counters, quoting *State v. Kastanis*, 848 P.2d 673 (Utah 1993) (per curiam), that the standard requires "the district court to determine whether the facts adduced by the State, notwithstanding contradiction of them by defense proof, warrant the conclusion that if believed by a jury they furnish a reasonable basis for a verdict." *See id.* at 676 (quotation simplified). We do not need to resolve this dispute here, however, because even under Silveira's proffered standard, the court did not err. Here, the court considered the alibi evidence along with the State's evidence, and the alibi evidence alone does not lead us to the conclusion that reasonable minds could not reach the same conclusion as the court that the specific date of the crime was not conclusive in this case. To the extent that Silveira argues that the court should have considered other evidence under this standard, such as the reliability of the witnesses listed

(continued…)

¶17    Silveira argues that this line of cases is not applicable to a court's substantial evidence determination when ruling to hold a defendant without bail because these cases generally "address[] the constitutional sufficiency of the notice, not evidentiary trustworthiness." We acknowledge that none of the cases cited deals directly with a court's substantial evidence determination in the bail context. But this does not change the usual rule that the alleged dates of offenses in child sexual abuse cases are not determinative, and the State is not required to prove the specific dates, even at trial. Silveira does not offer a reason why the State's burden would be more onerous in an interlocutory context than it is at trial, where the guilt-beyond-a-reasonable-doubt standard comes into play. So we view this premise as equally applicable when a district court makes its substantial evidence determination at this earlier stage of the proceeding. Thus, like at trial, an alibi defense is not necessarily outcome determinative in the bail setting.

¶18    We conclude that the district court did not err in determining that the State provided substantial evidence of the charged conduct even in the face of Silveira's alibi defense, because the alibi does not, as Silveira contends, categorically establish that he did not sexually abuse Ruby when she was twelve years old. All Silveira's alibi does is provide an argument to be presented at trial that Ruby's credibility is questionable because she could not remember the specific date of the alleged sexual abuse and because the dates she first provided to the police were apparently incorrect. But it does not, by itself, overcome the

---

or the qualifications of the signer of the probable cause statement, these arguments are not preserved, as previously explained, and we decline to address them. *See supra* ¶¶ 10–14. It is worth noting that this issue is also currently before the Utah Supreme Court in *State v. Randolph*, No. 20200881-SC (Utah argued Feb. 7, 2022).

district court's ruling that substantial evidence existed to sustain its no-bail determination.

## II. Substantial Danger to Any Other Individual
## or the Community

¶19   Silveira also argues that "[n]o facts support the court's conclusion that [he] was a 'substantial danger to the community'" and, thus, "the district court erred in concluding the state showed by clear and convincing evidence that [he] was so dangerous that he must be denied bail." As previously discussed, under Utah Code section 77-20-1(2)(c), once a court has made its substantial evidence determination, it may hold a defendant without bail if it also finds, by clear and convincing evidence, that the defendant constitutes, in relevant part, "a substantial danger to any other individual or to the community" at large. Utah Code Ann. § 77-20-1(2)(c) (LexisNexis Supp. 2021). Clear and convincing evidence "implies something more than . . . a preponderance, or greater weight, of the evidence; and something less than proof beyond a reasonable doubt." *Essential Botanical Farms, LC v. Kay*, 2011 UT 71, ¶ 24, 270 P.3d 430 (quotation simplified). "Courts that assess these comparative degrees of certainty have characterized the clear and convincing standard as the existence of facts that make a conclusion very highly probable." *Id.* (quotation simplified).

¶20   Silveira's contention that "no facts" supported the district court's ruling is incorrect. In the probable cause statement, Ruby's allegations detailed serious sexual offenses Silveira committed against a twelve-year-old child with whom he held an apparent position of trust as her older half-brother. The statement also indicated that Silveira attempted to cover up this abuse by telling Ruby "not to tell anyone about this." And at the bail hearing, Silveira stated that he would be spending time around his girlfriend's child, whom he referred to as his "quasi stepchild."

¶21 Here, there is evidence that Silveira presented a substantial danger, at the very least, to his girlfriend's child. *See* Utah Code Ann. § 77-20-1(2)(c) (stating that a court can hold a defendant without bail if, among other things, there is evidence that the defendant "would constitute a substantial danger to *any other individual*") (emphasis added). Based on the sworn allegation that Silveira had sexually abused a child, clear and convincing evidence existed that Silveira would be a substantial danger to his girlfriend's child because he would again be potentially placed in a position of trust over that child—or so it is fair to infer given his "stepchild" reference. Thus, it was "very highly probable," *see Essential Botanical Farms*, 2011 UT 71, ¶ 24 (quotation simplified), that Silveira was a substantial danger to his "quasi stepchild," and it was not error to continue to hold Silveira without bail.[7]

## CONCLUSION

¶22 The district court did not err in ruling that Silveira's alibi defense did not overcome the State's proffered substantial evidence that he was guilty of the alleged crimes. The court also did not err in ruling that clear and convincing evidence existed that Silveira constituted a substantial danger to his girlfriend's child.

¶23 Affirmed.

———————

7. While the district court premised its decision on there being clear and convincing evidence that Silveira was a substantial danger to the community at large, we can "affirm on any ground apparent in the record," *Trapnell & Assocs., LLC v. Legacy Resorts, LLC*, 2020 UT 44, ¶ 30, 469 P.3d 989, and clear and convincing evidence in the record strongly suggests that Silveira was a danger to his girlfriend's child, specifically.